THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DONALD SPATARO, Defendant-Appellant.

Third District   No. 77-282

Opinion filed December 29, 1978.—Rehearing denied January 29, 1979.

Julius Lucius Echeles, of Chicago, for appellant.

Edward Petka, State's Attorney, of Joliet (James E. Hinterlong and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

A jury in the Circuit Court of Will County found defendant guilty of murder. He was sentenced to 14 to 20 years in prison.

Shortly after midnight on July 8, 1976, defendant summoned police to the home of his girlfriend, Margaret Ward. Police found Miss Ward lying dead on the floor, shot once in the head. Defendant, who appeared to be distraught, initially told the officers, "She pulled the trigger, she pulled the trigger and I love her." Later, defendant was taken to the police station where, after being advised of his *Miranda* rights, he was twice interviewed by investigating officers. Both interviews were tape recorded with defendant's consent, and the tapes were played at trial as

part of the State's case-in-chief. In both interviews defendant stated that on the afternoon of July 7, 1976, after conversing with the victim at her home, he went fishing, taking his gun with him. He returned to the victim's home for supper late that evening and kept the gun in his belt as he ate. After supper, as defendant prepared to go to work, the victim became upset because she did not want him to leave. Defendant's account of what next transpired and how the fatal shot was fired differed in the two interviews. In his first statement defendant claimed the gun fired when the victim knocked it out of his hand. However, in his second statement defendant made no mention of the victim knocking the gun from his hand, explaining instead that the gun accidentally discharged as he was removing it from his belt. Defendant's testimony at trial substantially conformed to the statement he gave to the police in the second interview.

Two of the victim's neighbors, Mr. and Mrs. Van, testified that at about 12 o'clock on the night in question they heard a loud argument between a man and a woman in which the woman screamed, "Leave me alone, in the name of God, Jesus, Mary and Joseph, he is going to kill me won't someone help me." The witnesses did not know the defendant or victim and could not identify the voices, but defendant acknowledged that the victim habitually used the particular religious phrase mentioned by the witnesses.

Also testifying for the State were a criminalist from the Illinois Bureau of Investigation who performed tests on the gun and a pathologist who performed an autopsy on the victim. The experts agreed the fatal shot was fired from within one foot of the victim and the pathologist stated that in his opinion the shot was a contact shot or fired from within one inch of the victim. An expert witness for the defense did not think the shot was a contact shot, but he "could certainly say it is a close shot."

On appeal defendant's initial contention is that the statements given by him to police both at the scene and during the taped station-house interviews were obtained in violation of his constitutional rights and should not have been admitted into evidence. Defendant claims three separate violations of his rights under *Miranda*. First, he argues the statements he made to officers at the scene were inadmissible because he had not been advised of his *Miranda* rights prior to making those statements. Second, he claims that, although he was advised of his rights prior to each of the stationhouse interviews, other statements by the investigating officers negated the effect of those warnings so as to render his statements involuntary. Third, defendant suggests that the warnings given at the station were defective in that they led him to believe he had a right to consult with a lawyer only if he agreed to make a statement and only after going to court. We reject each of defendant's arguments and

conclude that defendant's statements were properly admitted into evidence.

■■■ Although defendant was not advised of his *Miranda* rights prior to making a statement at the scene, both the Illinois and United States Supreme Courts have held that statements made in response to routine investigatory questions, and asked during a brief initial period of noncoercive detention, are admissible. (*People v. Hubbard* (1973), 55 Ill. 2d 142, 302 N.E.2d 609; *People v. Schott* (2d Dist. 1976), 39 Ill. App. 3d 266, 350 N.E.2d 49.) We believe the questions asked defendant, who had himself summoned police to the scene, were of such a routine nature, and there is nothing in the record to suggest that defendant's responses were not voluntarily made. In fact, the evidence indicates that defendant's statement, "She pulled the trigger * * *," was volunteered by him before he was asked any questions by the officers.

Prior to giving any statements at the police station defendant was advised of his *Miranda* rights and he signed a statement saying that he understood and waived those rights. Nevertheless, he claims on appeal that his waiver was not knowingly given and his statements not voluntarily made because the interviewing officers made other statements to him which led him to believe that he was not a suspect and that his statements would not be used against him. We find defendant's claim to be without merit.

■■ Whether a defendant's statement was voluntarily made is to be determined by the trial court based on the totality of the circumstances surrounding the making of the statement. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870; *People v. Prude* (1977), 66 Ill. 2d 470, 363 N.E.2d 371.) Counsel for defendant filed numerous pretrial motions which included his motion to suppress the confession. We conclude that the factual determination necessary to a denial of the motion to suppress was not contrary to the manifest weight of the evidence and that the court's ruling was not erroneous as a matter of law. The officer did initially tell defendant he was not being charged with an offense and that his statement was needed to complete the accident investigation. However, the evidence does not indicate these statements were made to deceive the defendant or to negate the influence of the *Miranda* warnings. On the contrary, the evidence indicates the officer's statements were true. Prior to taking defendant's statement the officers had no reason to believe the death was other than an accident as defendant claimed. Defendant was not searched, handcuffed, booked, fingerprinted or photographed prior to the stationhouse interviews. Though a police report prepared several hours later indicated defendant was arrested at the scene, the investigating officers testified he was not arrested at that time and that he was taken to the police station only because he was interfering with the

investigation by his nervous pacing and incessant conversation. The officers carefully warned defendant that his statements could and would be used against him in court, and we have no basis for finding that defendant did not understand that clear warning.

Similarly, we have no reason to find that defendant did not understand his right to consult with a lawyer before answering any question. He was properly advised of that right; he said he understood that right; and he signed a statement waiving that right. On the basis of such evidence we cannot say the trial court erred in concluding that defendant voluntarily waived his rights and voluntarily made statements to the police. Defendant's statements were properly admitted into evidence.

■■ In his second major contention on appeal, defendant argues that, even if his taped statements made to the police were properly admitted into evidence, certain other statements made by police officers on the tapes should have been deleted before the tapes were presented to the jury. He claims he was denied a fair trial because of the admission of these prejudicial statements. However, defendant did not object to the admission of these statements at trial, nor did he raise the issue in his post-trial motion. This court has held that objections to evidence are waived by failure to interpose proper objections in apt time (*People v. Johnson* (3d Dist. 1975), 28 Ill. App. 3d 139, 327 N.E.2d 535), and by failure to bring alleged errors to the trial court's attention in a post-trial motion (*People v. Mazzone* (3d Dist. 1977), 52 Ill. App. 3d 859, 368 N.E.2d 207). We note that in a pretrial motion which was granted by the trial court, the defendant requested that certain statements with racial overtones be deleted, but failed to include in the motion a request to also eliminate the material of which the defendant now complains. In the instant case we adhere to our earlier holdings and conclude that defendant waived any objection to admission of the taped conversations.

■■ For the same reasons we also conclude that defendant waived his objection to the way the jury was instructed on the question of motive. At the State's behest the trial court instructed the jury that the State was not required to prove motive. Defendant's counsel offered no objection to this instruction and the issue was not raised in defendant's post-trial motion. Objections to instructions not raised in the trial court will not be considered for the first time on review. *Johnson; Mazzone.*

Defendant's next contention on review is that the trial court erred in not instructing the jury on the theory of involuntary manslaughter. Defendant did not tender an involuntary manslaughter instruction and in fact argued against giving such an instruction. Nevertheless, he argues that the court had a duty to give the instruction *sua sponte.* We disagree. The supreme court has recently held:

"Under Illinois law, the burden of preparing jury instruction is primarily on the parties, not on the trial court. (Ill. Rev. Stat. 1973, ch. 110, par. 67; 58 Ill. 2d R. 451.) Generally, the trial court is under no obligation either to give jury instructions not requested by counsel or to rewrite instructions tendered by counsel. (*People v. Parks* (1976), 65 Ill. 2d 132, 137; *People v. Springs* (1972), 51 Ill. 2d 418, 425; *People v. Moorelander* (1962), 25 Ill. 2d 309, 312.) Moreover, no party may raise on appeal the failure to give an instruction unless he shall have tendered it. (58 Ill. 2d R. 366(b)(2)(i).)" *People v. Underwood* (1978), 72 Ill. 2d 124, 129, 378 N.E.2d 513, 515.

■■ When the evidence in a murder case could support a verdict of manslaughter and the defendant does not request a manslaughter instruction, the giving of such an instruction is committed to the discretion of the trial court. (*People v. Taylor* (1967), 36 Ill. 2d 483, 224 N.E.2d 266.) Although there may be exceptions to the rule where it would be error for the court not to give a manslaughter instruction *sua sponte*, those exceptions are rare, being limited to cases where the evidence is very close on the question of whether defendant is guilty of murder or manslaughter. *People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756; *People v. Hall* (5th Dist. 1975), 25 Ill. App. 3d 992, 324 N.E.2d 50; *People v. Mitchell* (1st Dist. 1973), 12 Ill. App. 3d 960, 299 N.E.2d 472.

■■ The instant case does not fall within the exception. Although defendant's various accounts of the incident in question, standing alone, may have been sufficient to raise the issue of involuntary manslaughter, the other evidence in the case was overwhelmingly against such a result. Defendant said the victim knocked the gun from his hand or that the gun accidentally discharged as he was removing it from his belt. He denied there was any argument between him and the victim. However, two neighbors testified they heard a loud argument between a man and a woman in which the woman begged for her life in phrases characteristically used by the victim. All of the scientific evidence in the case indicated the fatal shot was fired within a very close range of the victim, probably within one inch of the victim. The failure of the trial court to *sua sponte* give the omitted instruction did not constitute a substantial defect which would invoke the limited exception to the waiver rule.

Furthermore, we must be particularly hesitant to require a court to give an instruction on its own motion where it may well have been part of the defense strategy not to have the instruction given. (*People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.) In that case the defendant contended that the trial court erred in not directing a mistrial *sua sponte* and severing the trials of the two defendants.

The court then held that the defendants waived the issue by failing to raise it at trial or in a post-trial motion, and that no plain error was shown to satisfy requirements for an exception to the waiver rule. There was no plain error because it was conceivable that defense strategy encompassed allowing the statements, with the inconsistencies, to be put in evidence to show their consistency in the larger and most crucial areas of the alibi defense. In the case at bar defense counsel argued against giving an involuntary manslaughter instruction, suggesting instead that the evidence would only support a verdict of guilty of murder or not guilty. It is reasonable to assume that it was part of defense strategy to have the jury presented with only these two alternatives. Under such circumstances we cannot say it was error for the trial court to proceed as defendant suggests. Indeed, "The interruption of this strategy may have, in itself, constituted error." *People v. Precup* (1978), 73 Ill. 2d 7, 17, 382 N.E.2d 227, 231.

■■ Defendant's fifth contention is that he was not proven guilty of murder beyond a reasonable doubt. The contention is clearly without merit. As indicated above the evidence was more than sufficient to support a finding that defendant murdered the victim during the course of a loud and violent argument. Defendant's contrary explanation of the death was rejected by the jury, whose function it is to weigh testimony, judge credibility and resolve disputed factual matters. (*People v. Williams* (1968), 40 Ill. 2d 522, 240 N.E.2d 645.) We see no reason to disturb the jury's determination in this case.

■■ Finally, defendant argues it was error for the trial court not to give the second paragraph of Illinois Pattern Instructions, Criminal, No. 3.02 (1968), which provides:

> "You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

However, this paragraph is to be given only where there is no direct evidence in the case. (*People v. Minish* (3d Dist. 1974), 19 Ill. App. 3d 603, 312 N.E.2d 49.) We have held that any statements made by defendant are to be considered as direct evidence. (*People v. Fletcher* (3d Dist. 1976), 40 Ill. App. 3d 537, 352 N.E.2d 10.) Defendant in this case gave at least three statements explaining how the incident in question occurred. These statements constituted direct evidence and justified the trial court's rejection of the tendered instruction.

The judgment of the Circuit Court of Will County finding defendant guilty of murder is affirmed.

Affirmed.

SCOTT, P. J., and ALLOY, J., concur.