THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERTO REQUENA *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 80-654, 80-2204 cons.

Opinion filed March 8, 1982.—Rehearing denied May 18, 1982.

832

Ralph Ruebner and Scott Graham, both of State Appellate Defender's Office, and Garland W. Watt, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and Dean P. Karlos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

Defendants Roberto Requena, Joseph Martinez and Michael Martinez were charged by information with rape, deviate sexual assault, and aggravated kidnapping. After a jury trial, Requena was found guilty of rape and sentenced to a 10-year term. Joseph Martinez and Michael Martinez were found guilty of all charges and sentenced to 15 years for aggravated kidnapping, 20 years for rape, and 20 years for deviate sexual assault. Requena filed a separate appeal which was consolidated by this court with the appeal of Joseph and Michael Martinez.

On appeal, Requena contends (1) the trial court improperly excluded relevant defense evidence; (2) hearsay evidence was improperly admitted; (3) he was not proved guilty beyond a reasonable doubt; and (4) the jury should have been instructed on attempt rape. Joseph and Michael Martinez contend the State's closing argument was prejudicial. All defendants contend their sentences are excessive.

We affirm.

Complainant testified that at approximately 4:15 a.m. on August 6, 1978, she and her boyfriend James Scott drove to a beach near a Commonwealth Edison plant. While there, a man whom complainant identified as Michael Martinez approached the driver's side of the car and asked for a cigarette. As Scott complied with the request, he was sprayed in the face with mace. Joseph Martinez then reached through the passenger window and sprayed mace on complainant. The two assailants dragged complainant from the car, beat her, and forced her into a green Gremlin driven by defendant Requena. They drove for approximately 10 minutes and stopped near some gravel hills. All three men forced complainant to engage in intercourse and perform fellatio. Complainant was pushed out of the car and as defendants drove away, she noted the license number PW 3090.

After complainant dressed, she ran to the street and stopped a car. The driver helped her find a police officer. She gave the police the license

number of the car and told him she had been raped by three men. The officer told her James Scott had already reported the incident. The officer returned to the scene of the alleged offense.

James Scott testified that after he was sprayed with a mace-like substance, he was unable to see, but heard complainant screaming. When he regained his sight, complainant was being forced into a car approximately 15 feet away. He attempted to follow the car, but drove off the road. Shortly thereafter, he returned to the beach with a friend. They found two policemen and drove around the beach. Fifteen minutes later, they found complainant with two police officers. Complainant was hysterical and badly bruised.

Officer Raymond Uchman testified that while he was on duty in a squad car on the morning in question, he was approached by Scott and another man. Scott's eyes were watering and he appeared tense. He and his partner took Scott to an area near the Commonwealth Edison plant and approximately 30 minutes later, they found complainant in a squad car with Lieutenant McNamara. Complainant was crying hysterically and her face was swollen.

Lieutenant McNamara testified that complainant approached his car at approximately 6 a.m. and stated she had been raped. McNamara noticed blood stains on her clothing. She did not appear to be intoxicated or under the influence of drugs. Complainant further told McNamara the license number of the car in which her assailants fled was BW 3090. McNamara learned the plates were registered to Martinez who lived at 10244 South Yates.

Officer James Gonsales monitored a police radio report at 6 a.m. and proceeded to 10244 Yates to look for a green Hornet. He saw the vehicle traveling on Yates and chased it five blocks before the car stopped. Requena and Michael Martinez were seated in front. Joseph Martinez was seated in back. A can of mace was found behind the back seat.

The parties stipulated to the following facts. A shirt worn by Michael Martinez and jeans worn by Joseph Martinez at the time of their arrest were stained with blood of the same type as that of complainant. Cloth found in defendant's car was also stained with this same blood type. A physical examination of complainant revealed she sustained a black eye and contusions and abrasions of the neck, face, head, back, left wrist, right wrist and thigh. She also had a small vaginal laceration.

Defendant Michael Martinez testified that he, his brother Joseph, and Roberto Requena went to the beach to purchase marijuana. When he got out of his car, he heard a woman scream. He removed a can of mace from the glove compartment and approached the car from which the screams came. He saw Scott beating complainant. Complainant screamed for help

and said Scott had taken drugs and was crazy. Michael Martinez sprayed Scott with mace, took complainant to his car and left the beach.

Later, they parked the car and complainant, while alone with Michael in the car, offered to engage in intercourse with Michael to thank him for saving her life. Later, she also had intercourse with Joseph Martinez and Roberto Requena. When defendants offered to take complainant home, she became irate. Rather, complainant wanted to return to the beach to find Scott, but defendants refused to take her. On cross-examination, he admitted that during an interview with an assistant State's Attorney, he claimed he had never seen complainant or James Scott.

Joseph Martinez testified that when Michael returned to the car with complainant, complainant was sobbing and bloodied. She said her boyfriend had beaten her. Joseph also had intercourse and oral sex with complainant, but did not force her to participate.

Roberto Requena's testimony corroborated that of the Martinezes. However, he testified that although he attempted, he was unable to have intercourse with complainant. Complainant agreed to have intercourse with Requena. On cross-examination, it was revealed that during an interview with the assistant State's Attorney, Requena denied knowledge of the incident.

First, Requena contends that the trial court excluded relevant defense evidence where it precluded cross-examination of complainant regarding her use of an intrauterine device and her sexual activities, if any, with James Scott prior to the incident. The trial court excluded this evidence under section 115—7(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 115—7(a)) which provides:

> "In prosecutions for rape or deviate sexual assault, the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim with the accused."

Defendant contends the application of the statute deprived him of his due process and equal protection rights.

■■ This statute was challenged on due process grounds in *People v. Cornes* (1980), 80 Ill. App. 3d 166, 399 N.E.2d 1346. In *Cornes*, the court noted that the statute neither precluded cross-examination of a complainant nor prevented the defendant from attacking complainant's credibility and veracity. The statute merely denied a defendant the opportunity to harass and humiliate the complainant. Therefore, the court found the statutory evidentiary restrictions did not violate defendant's due process rights. On the basis of *Cornes*, we find defendant's due process argument to be without merit.

■■ No Illinois court has addressed the issue of whether the statute

violates equal protection rights. However, in *Cherry v. State* (Ind. 1981), 414 N.E.2d 301, and *Finney v. State* (Ind. App. 1979), 385 N.E.2d 477, the statute survived an equal protection challenge. The courts reasoned that because a defendant in a rape case is not within a suspect classification, the equal protection clause requires only that the statute be rationally related to a legitimate State purpose. The courts then found that the statute was a rational attempt by the legislature to protect the complainant from harassment and humiliation and encourage victims of sexual assaults to report the crimes without fear of having their past sexual activities brought before the public. We agree with the rationale in *Cherry* and *Finney* and find that section 115—7 of the Code of Criminal Procedure of 1963 does not violate defendant's equal protection rights.

■■ We add that the rape shield statute was not the only basis for excluding the evidence of complainant's sexual activities, if any, with Scott. Even prior to the enactment of the statute, evidence of complainant's prior specific sexual acts was inadmissible and defendant was limited to proving only complainant's general reputation for immorality and unchastity. (*People v. Collins* (1962), 25 Ill. 2d 605, 186 N.E.2d 30, *cert. denied* (1963), 373 U.S. 942, 10 L. Ed. 2d 697, 83 S. Ct. 1551; *People v. Burgin* (1979), 74 Ill. App. 3d 58, 392 N.E.2d 251.) Thus, defendant in this case could not have questioned complainant regarding sexual activity she may have had with Scott prior to the incident.

■■ ■ Requena further contends hearsay evidence corroborating complainant's testimony was improperly admitted. He first objects to Lieutenant McNamara's testimony that complainant told him she had been raped. However, this evidence was admissible under the "prompt complaint" of rape exception to the hearsay rule. (*People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25; *People v. Hernandez* (1980), 88 Ill. App. 3d 698, 412 N.E.2d 572.) Requena further objects to the admission of complainant's testimony that the police officer told her Scott had already reported the abduction and to the admission of Lieutenant McNamara's testimony specifying the license number which complainant reported to him. The admission of this evidence was not objected to at trial nor was it raised in the post-trial motion. Thus, the issue was not preserved for review. (*People v. Osborn* (1977), 53 Ill. App. 3d 312, 368 N.E.2d 608, *cert. denied* (1978), 439 U.S. 837, 58 L. Ed. 2d 134, 99 S. Ct. 122; *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 337 N.E.2d 454.) Furthermore, the overwhelming evidence of guilt would render the error, if any, in admitting the evidence harmless. *People v. Hall* (1980), 90 Ill. App. 3d 1073, 414 N.E.2d 201.

■■ Third, Requena contends he was not proved guilty of rape beyond a reasonable doubt. However, the record overwhelmingly refutes this contention. Complainant's testimony alone, if believed by the jury, would

have been sufficient evidence of guilt, even though contradicted by the accused. (*People v. Lewis* (1979), 73 Ill. App. 3d 951, 392 N.E.2d 707.) Corroborating evidence of guilt was established by complainant's prompt report of the incident (*People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25; *People v. Edmond* (1979), 76 Ill. App. 3d 540, 395 N.E.2d 106), her hysterical condition after the occurrence (*People v. Griggs* (1970), 131 Ill. App. 2d 257, 266 N.E.2d 398), and defendant's flight from police (*People v. Ward* (1980), 83 Ill. App. 3d 766, 404 N.E.2d 847). It is the function of the jury to weigh the evidence and assess the credibility of the witnesses. (*People v. Burgin* (1979), 74 Ill. App. 3d 58, 392 N.E.2d 251.) In view of the evidence in this case, we cannot encroach upon this function.

Fourth, Requena contends the trial court erred in failing to instruct the jury on attempt rape. Defendant admits he did not tender an attempt rape instruction, but maintains the instruction should have been given *sua sponte*.

■■ A court must exercise restraint in giving instructions on its own motion. (*People v. Spataro* (1978), 67 Ill. App. 3d 69, 384 N.E.2d 553.) In doing so, it risks interfering with the defense strategy and thus committing error. (67 Ill. App. 3d 69, 75, 384 N.E.2d 553, 557, citing *People v. Precup* (1978), 73 Ill. 2d 7, 17, 382 N.E.2d 227, 231.) In the case at bar, defendant testified he was unable to have intercourse with complainant. It is therefore reasonable to assume that defense counsel intended to present the jury with only two alternatives, namely guilty of rape or not guilty, and eliminate the possibility of a guilty verdict on attempt rape. Under these circumstances the trial court was not obligated to instruct the jury on attempt rape.

■■ ■ Joseph and Michael Martinez contend the prosecutor's improper remarks during closing argument denied them a fair trial. They first complain of the prosecutor's statement that defendants had lied. However, in light of complainant's testimony, this comment was warranted. (*People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 337 N.E.2d 454.) Defendants also object to the prosecutor's characterization of them as "animals" and to the comment that complainant, in reporting the incident, "did something that if more women would do * * * there would be a lot more defendants caught." However, defendants' objections to the comments were promptly sustained and the evidence of guilt was clear and convincing. Thus, we cannot say that the remarks influenced the verdict or denied defendants a fair trial. *People v. Redmond* (1979), 73 Ill. App. 3d 160, 390 N.E.2d 1364.

Finally, all defendants contend their sentences are excessive. They maintain the trial court ignored mitigating factors that they were in their 20's when the crime was committed, they had no prior convictions, the social environment to which they would return was conducive to rehabili-

tation, and their backgrounds indicated they were unlikely to commit criminal acts in the future. Defendants therefore contend the trial court abused its discretion in sentencing.

■■ ■ The trial court is generally in a better position to determine sentences than is this court and considerable caution should be exercised in disturbing a sentence on appeal. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Burdine* (1980), 82 Ill. App. 3d 984, 412 N.E.2d 554.) In determining a sentence, the trial court is authorized to consider not only defendant's character, but also the nature and circumstances of the offense. (*People v. Lykins* (1979), 77 Ill. 2d 35, 394 N.E.2d 1182, *cert. denied* (1980), 445 U.S. 952, 63 L. Ed. 2d 787, 100 S. Ct. 1602; *People v. Cook* (1976), 41 Ill. App. 3d 946, 354 N.E.2d 122.) Other factors to be considered are defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. *People v. Cozzi* (1981), 93 Ill. App. 3d 94, 416 N.E.2d 1192; *People v. Walls* (1980), 87 Ill. App. 3d 256, 408 N.E.2d 1056.

Clearly, the brutal nature of the crimes is a compelling fact in aggravation of the sentences. Complainant was sprayed with mace, forcibly abducted, and beaten by Michael and Joseph Martinez. They forced her to engage in intercourse and deviate sexual acts. Apparently the Martinezes initiated the ordeal. In light of these factors and the seriousness of the offenses, we cannot say the trial court abused its discretion in sentencing each Martinez to 20 years for rape and deviate sexual assault and 15 years for aggravated kidnapping. Requena received a 10-year sentence for rape. The disparity between his sentence and those imposed upon the Martinezes is itself an indication that the trial court considered the factors in mitigation. Therefore, we find the trial court did not abuse its discretion.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

CAMPBELL, P. J., and O'CONNOR, J., concur.