THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CALVIN TRICE *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 1—87—2086, 1—87—2134 cons.

Opinion filed January 14, 1991.—Rehearing denied September 9, 1991.

Michael J. Pelletier, Martin Carlson, Richard C. Bollow, and J. Cunyon Gordon, all of State Appellate Defender's Office, of Chicago, for appellant Calvin Trice.

Samuel J. Cahnman and Richard F. Faust, both of Chicago, for appellant Sylvester Henderson.

Jack O'Malley, State's Attorney, of Chicago (Inge Fryklund, Marie Quinlivan Czech, William D. Carroll, Renee Goldfarb, and Walter P. Hehner, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Defendants Calvin Trice and Sylvester Henderson were jointly indicted on the charges of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)), armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)), arson (Ill. Rev. Stat. 1985, ch. 38, par. 20—1), and concealment of a homici-

dal death (Ill. Rev. Stat. 1985, ch. 38, par. 9—3.1). In a dual-jury proceeding, one jury found Trice guilty of murder, armed robbery and concealment of a homicidal death, and a separate jury found Henderson guilty of murder and armed robbery. The circuit court sentenced Trice to confinement for the remainder of his natural life for murder, and 30 years and 5 years, respectively, for armed robbery and concealment of a homicidal death. The court sentenced Henderson to concurrent terms of natural life for murder and 30 years for armed robbery.

Prior to trial, defendants moved to suppress custodial statements made to the police and other evidence that they claimed was obtained incident to an illegal arrest. The trial court denied the motions, finding that the police had probable cause to arrest. The court made no ruling on Trice's motion *in limine* to preclude the State from introducing into evidence the contents of a 911 telephone call.

On appeal, both defendants assert that: (1) they were arrested without probable cause; and (2) the trial court erred when it allowed the juries to hear the contents of an inculpatory anonymous 911 telephone call made by a purported eyewitness to the homicide. In addition, Trice raises the issues whether: (1) the trial court erred when it refused to allow him to use an exculpatory letter to impeach one of the State's key witnesses; (2) the trial court erred when it allowed the testimony of a State witness who had been unavailable to the defense until the day of the witness' testimony; and (3) the court erred when it permitted the defendants to be tried simultaneously in a dual-jury proceeding. The issues presented for review on behalf of Henderson are: (1) whether the trial court improperly considered a "victim impact statement" during Henderson's sentencing hearing; and (2) whether Henderson's sentences of natural life for murder and 30 years for armed robbery are excessive.

As a result of the dual-jury proceeding, the two juries heard testimony jointly and separately. Officer Peterson, a Chicago police officer, testified on behalf of the State. On February 1, 1986, he was called to the scene of a fire in the alley at 69th and Peoria Streets at about 10 p.m. When he arrived, firemen were extinguishing the fire on a late model van in which he saw the charred remains of a body that was later identified as police officer Schaeffer. Dr. Kalelkar, a medical examiner, testified that the victim had sustained two gunshot wounds, one to the chest and one to the head, which had been fatal, and that the victim was dead before he was burned.

The State's key testimony was elicited from Angelia Lathan, the girlfriend of Trice. On January 31, 1986, at about 6 p.m. she left the

home of a friend, Glenda, to look for Trice when she was approached near 70th and Peoria by a white male "wanting to buy some reefer." When Trice and Henderson approached, she inquired if Trice had any marijuana, and Henderson replied that he did and told her to tell the man to pull his van into the alley. When the man stepped out of the van, Henderson told him "he had to have it all," but the man replied "it's not like that" and reached into his jacket. At this point, Henderson pulled out a gun and shot the man. Then, Trice shot the man again, which caused him to fall backward into the van. Although Henderson suggested that they "take out" Angelia to prevent her from "tricking" to the authorities, Trice convinced him that Angelia would not tell on them. During cross-examination, when Trice's counsel attempted to impeach Angelia's credibility with a letter she had written to him during her sequestration in Mississippi, the State objected on the ground that the letter had not been provided to them during discovery. The court disallowed use of the letter.

Detective Craig Cegielski also testified. On Monday, February 3, 1986, at about 9:30 a.m., he and his partner listened several times to a recorded tape that an anonymous caller had telephoned in on the 911 number on February 2, 1986, purporting to have information "about the murder at 69th and Peoria." The call was traced to a pay telephone a few miles from the scene of the crime. After listening to the tape, Cegielski conducted an investigation which turned up three suspects: Calvin Trice, Angelia Lathan and Sylvester Henderson, who were subsequently brought to the station and questioned.

Defendants objected to the detective's testimony concerning the 911 tape. The trial court ruled that the contents of the 911 tape were admissible as to Henderson since his counsel's questions to Angelia suggested that she tailored her testimony to the 911 tape. The court initially commented that admission of the tape as to Trice was "close"; however, in reliance on several appellate court decisions and the fact that the jury was "left with the impression that the investigation fell out of thin air," the judge reversed his earlier ruling and allowed admission of the 911 tape in evidence to "show the continuity of the police action." In addition, Elwin "Whorl" Ward testified on behalf of the State and stated that Trice had made certain admissions to him about his (Trice's) involvement in a robbery and murder.

Trice testified that on January 31, 1986, he spent the afternoon at his mother's house, except for a brief trip to the cleaners; most of the early part of the evening from about 6 p.m. until 9 p.m. at a friend's house, playing cards; and the remainder of the evening, he went to the Surf Lounge, left for Chris' party at 68th and Aberdeen and re-

turned to the lounge where he remained until it closed around 2 a.m. on Saturday, February 1, 1986. Trice presented witnesses who corroborated his version of what occurred and contradicted Angelia's testimony as to her whereabouts on the days in question. Henderson presented alibi witnesses who placed him at his home the entire evening of January 31, 1986. He also testified on his own behalf and stated that the statements he made were false and elicited as a result of coercion by the arresting officers.

We first address whether the trial court correctly found that probable cause existed for defendants' arrests. Defendants maintain that there was no probable cause for arrest because the independent corroboration of the information given by the anonymous caller was insufficient and had too few details to be reliable. They urge that the trial court misapplied the probable cause determination as set forth by the United States Supreme Court, and thus erred in denying their motion to suppress the evidence obtained as a result of the illegal arrest.

The State initially responds that with respect to Henderson, this issue is waived on appeal because of his failure to specify in the written post-trial motion the reason he believed he had been arrested without probable cause. Alternatively, and with respect to Trice, the State asserts that the police provided sufficient independent corroboration of the anonymous 911 telephone caller's information to establish probable cause for defendants' warrantless arrests.

■■ This court will not set aside a trial court's disposition of a motion to suppress unless such decision is manifestly erroneous. (*People v. Evans* (1988), 125 Ill. 2d 50, 78, 530 N.E.2d 1360; *People v. Stewart* (1984), 105 Ill. 2d 22, 41, 473 N.E.2d 840; *People v. Holmes* (1989), 198 Ill. App. 3d 766, 556 N.E.2d 539.) Neither will a trial court's ruling that there was probable cause to arrest be disturbed by a reviewing court unless it is manifestly erroneous. *Evans*, 125 Ill. 2d at 71.

■■ A court of review must determine whether the trial court had a substantial basis for concluding that probable cause existed. (*Illinois v. Gates* (1983), 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332; *People v. Tisler* (1984), 103 Ill. 2d 226, 248, 469 N.E.2d 147.) Our courts have repeatedly found that probable cause exists where the facts and circumstances known to the police are sufficient to warrant the belief of a reasonable and prudent person that an offense has been committed and that the person arrested has committed the offense. Ill. Rev. Stat. 1987, ch. 38, pars. 107—2(1)(a), (1)(c); *People v. Montgomery* (1986), 112 Ill. 2d 517, 525, 494 N.E.2d

475; *People v. Lippert* (1982), 89 Ill. 2d 171, 178, 432 N.E.2d 605; *People v. Lekas* (1987), 155 Ill. App. 3d 391, 410, 508 N.E.2d 221.

■ The information relied upon to establish probable cause to arrest must be supported by some indicia of reliability. (*People v. James* (1987), 118 Ill. 2d 214, 514 N.E.2d 998.) The Supreme Court adopted a two-prong test with which the probable cause information must comply: (1) the basis of the informant's knowledge and (2) the credibility or reliability of the informant. (*Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509; see also *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584.) However, in *Gates*, the Court abandoned the strict *Aguilar-Spinelli* test and adopted a totality of circumstances approach, finding that the existence of probable cause is to be governed by common sense and practical considerations. (See also *Tisler*, 103 Ill. 2d at 236, 245.) In *Gates*, the Supreme Court emphasized the need for independent police investigation that corroborates the details of an informant's story as "other sources of information reduced the chances of a reckless or prevaricating tale." *Gates*, 462 U.S. at 244-45, 76 L. Ed. 2d at 552-53, 103 S. Ct. at 2334-35.

■ In the case at bar, Detective Cegielski had probable cause to arrest defendants based upon information received in the 911 telephone call where the informant identified herself as an eyewitness and identified defendants and Angelia by name and physical description, described the occurrences at the scene of the crime which included the murder and fire, and the nature of the wounds sustained by the victim. The court stated that the informant's desire for anonymity was based on her fear of being harmed for cooperating with the police rather than a lack of credibility or reliability. In addition, nearly every aspect of the information supplied by the anonymous caller was corroborated by the police. Detective Cegielski's own investigation revealed the names, nicknames and addresses of the three persons described in the call, their relationship to each other, a description of the automobile owned by Trice and the car's license plate number. Moreover, the record demonstrates that when the police went to Trice's home and were told he was not there, they observed his automobile parked across the street from the house. The officers then "staked out" the house. Approximately 15 minutes later Trice and Angelia came out of the house and entered Trice's auto. The police followed the car a few minutes and then pulled them over. Trice and Angelia identified themselves, and when asked if his nickname was "Beast Monster," Trice replied that it was "Beast Man," the same name given by the anonymous caller. Thus, the 911 call, where

the caller specified that she witnessed the murder from her back porch, in conjunction with the police investigation which corroborated the details given in the call, and the conduct of Trice and Angelia, who exited a house where Trice was said to be unavailable only minutes before, and entered a car with out-of-State license plates, which may have suggested an attempt to flee, sufficiently furnished probable cause to believe that a warrantless arrest was necessary.

Accordingly, in applying the totality of circumstances test of *Gates* to these facts, we find that the trial court properly denied defendants' motions to quash arrest and suppress the evidence.

Defendants next contend that the trial court erred by allowing in evidence inadmissible hearsay when it permitted the juries to hear the contents of the 911 telephone call recording. Initially, the State again responds that Henderson has waived this issue for purposes of appeal as he failed to present it in his written post-trial motion. In the alternative, the State urges that admission of the 911 tape was proper for the limited purpose of demonstrating to the jury the reasons the police acted in the manner they did during the course of the investigation.

■■ ■ First, in addressing the question of the waiver rule, we note that it is not a complete bar to appellate review; rather, the waiver rule serves as a rule of administrative convenience. Pursuant to Supreme Court Rule 615(a), a reviewing court may in the interest of justice take notice of all issues which appear to be plain error or defects affecting substantial rights. (See 107 Ill. 2d R. 615(a); *People v. Britz* (1988), 123 Ill. 2d 446, 486, 528 N.E.2d 703.) Our courts have determined that admission of hearsay evidence may constitute plain error and, thus, be considered under the plain error rule. (See *People v. Gischer* (1977), 51 Ill. App. 3d 847, 366 N.E.2d 521.) Here, the record neither reflects that defendants were denied a fair trial nor that the evidence is closely balanced. Accordingly, we need not invoke the plain error doctrine.

■ If we were to consider the merits of defendants' contentions, we would conclude that introduction of the evidence of the anonymous call was not plain error requiring reversal of defendants' convictions. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted (*People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223; *People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738), and generally is not admissible in evidence. (Fed. R. Evid. 801.) However, a hearsay statement is permissible in certain situations where it is not offered to prove the truth of the matter asserted. For instance, the statement is allowed where it is offered for the limited purpose of

showing the course of a police investigation. (*People v. Loggins* (1985), 134 Ill. App. 3d 684, 480 N.E.2d 1293.) In *Loggins*, this court found the admissibility of a statement proper where it was used to demonstrate the continuity of police investigations. See also *People v. Billingsley* (1989), 184 Ill. App. 3d 142, 539 N.E.2d 1302; *People v. Green* (1985), 136 Ill. App. 3d 361, 483 N.E.2d 606; *People v. Matthews* (1985), 137 Ill. App. 3d 870, 485 N.E.2d 403.

■ Admissibility of evidence is within the sound discretion of the trial court, and its ruling will not be reversed unless there has been an abuse of that discretion. (*People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696.) In the present case, Detective Cegielski testified that while investigating the instant murder, he listened to a tape recording of a 911 call and then researched information on several individuals: Henderson, Trice and Angelia.

Additionally, the record reflects that Henderson's counsel repeatedly queried Angelia during cross-examination as to whether she fabricated a story to match the one given by the 911 caller in order to receive a better "deal." Following the testimony of the several witnesses, the trial court noted that the jury was "left with the impression that this investigation fell out of thin air," and thus allowed the juries to hear the tape so that they would understand why the police focused their investigation on defendants and Angelia.

■ With respect to Henderson alone, we believe that the trial court properly admitted the tape to rebut the implication that Angelia tailored her testimony to the 911 call. Where, as here, a defendant invites the admission of evidence, he cannot complain. (*People v. Jones* (1987), 161 Ill. App. 3d 688, 515 N.E.2d 166.) With respect to both defendants, we hold that the trial court did not abuse its discretion in allowing the 911 tape to be heard by the juries where its purpose was to demonstrate and explain the continuity of police conduct in that Detective Cegielski testified that the 911 tape prompted him to proceed with his investigation.

■ Moreover, the record reflects that both before and after the juries heard the tape, the trial court specifically instructed them that they were to consider the 911 tape for the limited purpose of understanding how the defendants came into the custody of the police. During the respective jury instructions, the court stated:

> "You have heard a 911 tape. The substance of this tape is not evidence as to the guilt or innocence of Calvin Trice (Sylvester Henderson). It may only be considered for determining the reason why Calvin Trice (Sylvester Henderson) was arrested and questioned."

In arguing that the tape's prejudicial effect outweighs its probative value, defendants urge us to reverse their convictions. However, defendants' claim of prejudice is equally without merit. On this record, if we were to find admission of the tape error, admission of hearsay evidence, although error, is harmless beyond a reasonable doubt where there is overwhelming evidence of guilt (*People v. Requena* (1982), 105 Ill. App. 3d 831, 435 N.E.2d 125), or, as otherwise stated, where there is no reasonable possibility that the jury's verdict would have been different had the tape been excluded. (See *People v. Griggs* (1982), 104 Ill. App. 3d 527, 432 N.E.2d 1176.) Angelia testified that she saw Henderson and Trice shoot the deceased. Defendants admitted their participation in the crimes to several law enforcement personnel, and another witness, Elwin Ward, stated that Trice told him on two different occasions that he had robbed and murdered someone on January 31, 1986. While the testimony of defendants and their witnesses denied and contradicted that of the State's witnesses, it is clear that the juries chose to believe the State's witnesses, as opposed to defendants'.

### DEFENDANT TRICE

We now address the issues raised by defendant Trice. Trice first contends that the trial court erred when it refused to allow his defense counsel to impeach the credibility of State witness Angelia Lathan, with a letter dated March 7, 1986, in which she wrote to Trice and recanted her custodial statements and grand jury testimony. The State contends that the trial court properly excluded the letter because defense counsel's failure to disclose it to the prosecution was a blatant disregard for the discovery rules. Alternatively, the State asserts that any error in excluding the letter was harmless error as it was merely cumulative of the impeachment evidence presented at trial. We agree with the State's position. The goals of pretrial discovery in a criminal trial are to promote the search for truth and to eliminate surprise as a trial tactic. (*People v. Boclair* (1987), 119 Ill. 2d 368, 373, 519 N.E.2d 437.) The same underlying goals are served both by discovery against the prosecution and by discovery against the defense. (*Boclair*, 119 Ill. 2d 368.) Pursuant to Supreme Court Rule 413:

> "(d) Defenses. Subject to constitutional limitations and within a reasonable time after the filing of a written motion by the State, defense counsel shall inform the State of any defenses which he intends to make at a hearing or trial and shall furnish the State with the following material and information within his possession or control:

\*\*\*

(ii) any books, papers, documents, photographs, or tangible objects he intends to use as evidence or for impeachment at a hearing or trial." 107 Ill. 2d R. 413(d)(ii).

In the present case, when Trice's defense counsel questioned Angelia on cross-examination, he asked her about a letter she wrote to defendant in March of 1986 while she was in Mississippi. The State objected to the use of the letter because defense counsel had never disclosed it during discovery. When questioned by the court, defense counsel replied that he got the letter "a couple of months" ago. When the court called a recess and removed the jury, the following discussion ensued between the court and defense counsel:

"THE COURT: All right, Mr. Rhodes [defense attorney], why didn't you show them that letter?

MR. RHODES [Trice's Defense attorney]: I didn't think I was required to.

THE COURT: All right. You know we had a discussion on this. I told you two months ago, any written statements, matters which relate to impeachment, it is as clear as a [*sic*] bell that matters relating to impeachment were subject to discovery rules. You knew that full well."

Although the State requested that the letter be excluded as evidence, the court did not rule and recessed for the weekend. When the court reconvened on Monday, it asked defense counsel for an explanation as to why the letter was not disclosed. Counsel cited several cases and urged that where a defendant has withheld evidence that is not covered by Rule 413, where the State has not requested the withheld information, and where the trial court has not ordered disclosure of that same material, then there has been no violation of Rule 413. The trial court found that defense counsel had violated the rules of discovery and subsequently prohibited Trice's use of the letter in any manner.

Pursuant to Supreme Court Rule 415, failure to comply with the rules of discovery may subject a party to sanctions, which includes the harsh penalty of exclusion of the undisclosed evidence. (107 Ill. 2d R. 415(g)(i).) It is well settled that it is within the sound discretion of the trial court to fashion a sanction and its ruling will not be disturbed on appeal unless there has been an abuse of discretion. (*Taylor v. Illinois* (1988), 484 U.S. 400, 98 L. Ed. 2d 798, 108 S. Ct. 646; *People v. Weaver* (1982), 92 Ill. 2d 545, 442 N.E.2d 255.) In *Weaver*, the Illinois Supreme Court reiterated that the judgment of the trial judge is given great weight and that each case must be de-

cided on its own facts. (*Weaver*, 92 Ill. 2d at 559, 560.) The proper determination to be made by this court on review is whether prejudice flows from failure to disclose the evidence. In the instant matter, as defense counsel knew of the existence of the letter and had it in his possession for months before the trial, we find no error in the trial court's ruling that exclusion of the letter was warranted. The court merely prohibited defense counsel from cross-examining Angelia on the one letter he flagrantly failed to disclose, instead of prohibiting cross-examination altogether. Moreover, the court allowed counsel to impeach Angelia regarding her other exculpatory correspondence to defendant. Applying the applicable factors to the present matter, we conclude that the trial court did not abuse its discretion.

Trice next urges that the trial court erred when it allowed the testimony of State witness Elwin Ward, who had been unavailable to the defense until the day of his testimony. The State responds that it complied with discovery when it disclosed the last known address for this witness and that it had no knowledge of any other address. Our review of the record reflects that the State complied with discovery inasmuch as it made available to the defense the names and addresses of potential witnesses. On the day Ward testified, the following colloquy ensued between the court and defense counsel:

"MR. RHODES [Defense attorney]: My next motion is a motion *** to preclude the State from calling a witness who is listed on their answer to discovery, which they gave me, an address which I attempted numerous times to contact this witness at this address. The witness was not at this address.

Now today, the State brings in the witness and tells me they want to hurry and put the witness on so they can get him back to the hotel.

\* \* \*

THE COURT: The witness will be available to you prior to the time.

MR. STOCK [Assistant State's Attorney]: He already talked to him. He already talked to him.

THE COURT: Did you ask him if he wanted to talk to you privately?

MR. RHODES: I asked him today that.

THE COURT: What did he say?

MR. RHODES: Today, he said, no, he didn't want to talk with me.

THE COURT: Problem solved.

MR. RHODES: I'm moving to exclude the State from calling this witness.

THE COURT: I know one thing. I know you had a chance to talk to this witness, and the witness says he doesn't want to talk to you. That's the matter that is at hand.

\* \* \*

The motion is heard and denied."

The State has a duty to disclose all witnesses or potential witnesses to the defense (*People v. Hanna* (1983), 120 Ill. App. 3d 602, 457 N.E.2d 1352), and where the defendant has been surprised or prejudiced by the State's violation of discovery, this court has found that the trial court abused its discretion in allowing such testimony. *People v. Shiflet* (1984), 125 Ill. App. 3d 161, 180, 465 N.E.2d 942.

In the present case, although the record shows that Ward testified that he was advised by the police to leave town, he also stated that he returned periodically. Trice argues that he was unable to contact Ward after numerous attempts because of the State's failure to advise him of the correct address. However, the record demonstrates that the State disclosed Ward's name as a potential witness and listed his last known address. Further, Ward testified that he left the city because he was threatened by Trice's relatives and that he had not talked with either the police or the prosecution until approximately a week before trial. Moreover, the record discloses that defense counsel had an opportunity to speak with Ward prior to his testimony; however, Ward refused to talk to him, and thus, it cannot be said that defendant was prejudiced or surprised in any way. Therefore, based on this record, we conclude that the court properly determined that Trice failed to prove that the State did not list the witness' last known address or that it acted in bad faith. Accordingly, we conclude that there was no abuse of discretion in the trial court's ruling that the State properly complied with the discovery rules and find no error with its decision to allow the testimony of the State's witness.

Finally, Trice asserts that the trial court erred when it permitted defendants to be tried simultaneously before two separate juries. Trice has cited no authority to support his proposition; rather, he urges impropriety because the legislature has not sanctioned or authorized a dual-jury proceeding. He also postulates that in light of the purposes and rationale underpinning *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, which sets forth factors for determining when severance is required, such purposes and

rationale are thwarted when a trial court orders severance but conducts a dual trial. Trice urges that he was prejudiced because he and Henderson sat at the same table, were often referred to as codefendants, and confusion and prejudice inured to him during Henderson's cross-examination of some of the State's witnesses.

■■ Based on our supreme court's holding in *People v. Ruiz* (1982), 94 Ill. 2d 245, 447 N.E.2d 148, the Illinois courts have sanctioned the joint jury trial procedure. Defendant Ruiz moved to sever his trial from that of his codefendant, Caballero, because Caballero had made certain statements which incriminated Ruiz. The trial court granted the motion but ordered that the case be tried simultaneously before two juries. On review, the Illinois Supreme Court held that because the record failed to reveal any incidents of impropriety, the trial court did not abuse its discretion in employing the two-jury trial procedure. In *People v. Church* (1981), 102 Ill. App. 3d 155, 429 N.E.2d 577, under facts very similar to the instant matter, the appellate court upheld the trial court's use of a dual-jury trial where defendant Church was implicated by his codefendant in a pretrial statement, where each jury heard evidence relevant only to its particular defendant, and where Church could not point to any instance of prejudice. Here, we find no merit in Trice's contentions that allowing the defendants to sit together at trial and allowing the juries to hear overlapping evidence denied him a fair trial. The defendants were linked as coparticipants from the outset. Neither does our review of the record substantiate Trice's claim that there was evidence before his jury that Henderson had incriminated him. Similar to the *Ruiz* case, the record here discloses that both defendants were given an opportunity to present a defense, the trial court properly instructed the jurors concerning the dual-jury process, and that most of the evidence offered at trial was admissible against both defendants. Trice has failed to indicate "a single incident of confusion or impropriety." (*Ruiz*, 94 Ill. 2d at 260.) Accordingly, we find that the trial court did not abuse its discretion in conducting the dual-jury proceeding.

### DEFENDANT HENDERSON

In this portion of the opinion, we consider Henderson's contentions that the trial court improperly considered a "victim impact statement" written by Geneva Schaeffer, the deceased's wife, during his sentencing hearing, and that the resulting sentences imposed by the court are excessive in light of his criminal record.

■■ Section 6 of the Bill of Rights for Victims and Witnesses of Violent Crime Act (Ill. Rev. Stat. 1987, ch. 38, par. 1406) grants to

victims of violent crimes the right to be present at sentencing and to address the court in regard to the impact of the crime upon the victim. The United States Supreme Court and our supreme court have recently addressed the admission of victim impact statements. (*Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529; *People v. Turner* (1989), 128 Ill. 2d 540, 539 N.E.2d 1196.) In *Booth*, where a very lengthy and emotional victim impact statement was read to the jury at a death penalty sentencing hearing, the Court found that use of the statement was error because the emotional effect of the crime on the victim's family would divert the jury's attention from considering the circumstances of the crime and the character of the defendant. The Court further opined that, "Our disapproval of victim impact statements at the sentencing phase of a capital case does not mean, however, that this type of information will never be relevant in any context. Similar types of information may well be admissible because they relate directly to the circumstances of the crime. Facts about the victim and family also may be relevant in a non-capital criminal trial. Moreover, there may be times that the victim's personal characteristics are relevant to rebut an argument offered by the defendant." *Booth*, 482 U.S. at 507 n.10, 96 L. Ed. 2d at 451 n.10, 107 S. Ct. at 2535 n.10.

In Illinois, our supreme court, prior to *Booth*, had determined that introduction of a victim impact statement at a defendant's death-penalty hearing was error. (*People v. Hope* (1986), 116 Ill. 2d 265, 508 N.E.2d 202.) However, three years later, the supreme court held that such reasoning should not be extended to noncapital cases. (*Turner*, 128 Ill. 2d at 578.) Like the *Hines* court (*People v. Hines* (1988), 165 Ill. App. 3d 289, 518 N.E.2d 1362), "[h]ere, the impact evidence was presented to the court at sentencing, where the imposition of the death penalty was not in issue." (*Hines*, 165 Ill. App. 3d at 302-03.) Accordingly, based upon the holdings in *Booth*, *Turner*, and *Hines*, we conclude that use of the victim impact statement here was proper. The record is devoid of any indication that the trial court particularly considered the victim impact letter when sentencing Henderson. Rather, the record discloses that the court considered the aggravating factors, in particular the brutal nature of the offenses, and the mitigating factors, the "absence of any significant record."

Finally, we consider Henderson's argument that the sentences entered by the trial court are excessive. It is well established that the sentence imposed by the trial judge is entitled to great weight and deference and may not be altered by a reviewing court absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149,

368 N.E.2d 882.) Although we have the discretionary power to reduce an excessive sentence pursuant to Supreme Court Rule 615(b)(4) (107 Ill. 2d R. 615(b)(4)), the trial judge is in a superior position to consider and determine the punishment to be imposed rather than a court of review (*Perruquet*, 68 Ill. 2d at 154), and we will not substitute our judgment for that of the trial court merely because we would have balanced the appropriate factors differently had we been charged with the task of sentencing. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

Pursuant to section 5—8—1 of the Unified Code of Corrections, a trial court may sentence the defendant to a term of natural life imprisonment, if the court finds, *inter alia*, that the murder was accompanied by exceptionally brutal or heinous behavior or that any of the aggravating factors listed in subsection (b) of section 9—1 of the Criminal Code of 1961 are present. (Ill. Rev. Stat. 1987, ch. 38, pars. 1005—8—1(a)(1), (b).) In the case at bar, the trial court specifically found that, but for his lack of criminal history, defendant would be eligible to be sentenced to death pursuant to section 9—1 of the Criminal Code of 1961. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1.) However, because the section 9—1(b)(6) factors still existed, defendant was eligible for natural life imprisonment, and contrary to defendant's contention, the court did not necessarily have to reach a finding of exceptionally heinous or brutal behavior. The court stated, however, that the act was "done so easily and so remorselessly and without *** extensive planning," rather, it "was just a casual event in which they engaged without apparent great meaning to them. [Defendant] thought nothing of taking his life after [he and Trice] were prepared to take his money." Thus, we agree with the State's argument that the trial court was well aware of defendant's lack of compassion and disregard for human life.

We have reviewed the record and find that the trial court considered evidence presented in support of factors in aggravation, *i.e.*, the victim impact statement, the brutal nature of the crimes, and mitigating factors, *i.e.*, the lack of criminal history, and balanced this evidence against the nature of the offense and the court's "strong obligation" to consider deterrence. Neither did the court believe that defendant was of such "moral fiber" that he would not kill again at the first opportunity. As a presumption exists that the trial court considered only reliable and competent evidence when it sentenced the defendant (*People v. Hall* (1986), 114 Ill. 2d 376, 419, 499 N.E.2d 1335), we here conclude that the trial court followed the statutory mandate in sentencing Henderson. Moreover, with respect to the sen-

tence for armed robbery, which is a Class X felony, a sentence of not less than six years and not more than 30 years' imprisonment will be imposed. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(3).) Consequently, we find that as the trial court was within the statutory mandate for the sentence for armed robbery, in addition to those factors already noted, there was no abuse of discretion for imposition of the sentence of 30 years against Henderson.

Accordingly, there being no abuse of discretion, and given the extreme aggravation and the relative degree of mitigation, this court need not invoke its statutory power to reduce the sentences imposed on Henderson by the trial court.

For the foregoing reasons, we affirm the convictions of both defendants and the sentences imposed.

Judgments affirmed.

CAMPBELL and O'CONNOR, JJ., concur.