THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES C. BURTON, Defendant-Appellee.

First District (1st Division) No. 83—0695

Opinion filed February 11, 1985.

154

CAMPBELL, J., dissenting.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Garritt E. Howard, and Karen C. Wirth, Assistant State's Attorneys, of counsel), for the People.

No brief filed for appellee.

PRESIDING JUSTICE McGLOON delivered the opinion of the court:

The defendant, James C. Burton, was charged by complaint with unlawful use of weapons. (Ill. Rev. Stat. 1981, ch. 38, par. 24—1(a)(4).) Prior to trial, defendant filed a motion to suppress the weapon that was seized from his person when arrested. After a hearing, that motion was granted. The State appeals (87 Ill. 2d R. 604(a)(1)), contending that the search by the metal detector was a private search, and therefore, was not subject to the exclusionary

rule and that the frisk of defendant by the arresting police officer was valid pursuant to the exception in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. Defendant has not filed a brief, but we will consider the merits of the State's contentions. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

The following facts were adduced at the hearing on defendant's motion to suppress: On November 12, 1982, the defendant went to the Aragon Ballroom, which is located in the 1100 block of West Lawrence Avenue in Chicago, in order to attend the televised fight between Alexis Arguello and Aaron Pryor. At that time, he was in possession of his gun. Defendant arrived at 8:15 p.m. and purchased a ticket. He then proceeded through the outer lobby toward the door in the inner lobby. Above the door to the inner lobby was a large orange sign written in English and Spanish which warned patrons that for their safety before entering they would be checked by an electronic metal detector. The metal detector was located three feet inside the inner door.

Officer Venticinque, who was assigned that night to the area where the Aragon Ballroom is located, had stopped at that location and had informed the Aragon security personnel that he would be the tactical officer on duty that evening in the event that there were problems regarding auto theft, narcotics in the washroom and other things. Officer Venticinque happened to be standing between the warning sign and the metal detector when defendant walked in a single file through the detector at 8:15 p.m. The alarm then sounded. In response Officer Venticinque patted down defendant's outer clothing and discovered a loaded revolver concealed on defendant's side. The police officer then took possession of the weapon and arrested defendant on a charge of unlawful use of weapons.

It was established that the metal detectors at the ballroom were set for large quantities of metal. Defense witness Vincent DiVito testified, nonetheless, that he did not recall seeing any detectors or any signs referring to any detectors when he arrived at the ballroom at approximately 7 p.m. that same evening. He stated that he encountered three off-duty policemen who allowed him entrance without having to pass any metal detectors. However, it was established that special guests of the management were personally guided through separate entrances which were not monitored by metal detectors. DiVito further stated that he did not believe that there was a warning as to the metal detectors printed on his ticket. It was further established that metal detectors had been used for the past three years at the ballroom.

Defendant testified in his own behalf and denied consenting to the electronic search and also denied seeing the sign above the doorway. Although several persons were being searched in that area ahead of him, defendant indicated that he was not aware of the potential for a search.

The State also introduced two photographs of the warning signs. These photographs revealed that the warning was printed in large black letters on a fluorescent orange background. These two signs, one in Spanish and one in English, were suspended from the ceiling.

After hearing this evidence, the trial court suppressed the gun, reasoning that it was the product of the pat-down search by Officer Venticinque. The trial court based its decision solely on lack of consent, stating that the signs in the area were too ambiguous and that the ambiguity required the State to show by clear and convincing evidence that consent was freely and voluntarily given. The court concluded that the State had failed to satisfy its burden.

The State maintains that the first search was a private search, and consequently, was not subject to the exclusionary rule. The State further asserts that the second intrusion constituted a pat-down search which was justified by *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. We are in agreement with these contentions.

■ The burden of going forward with evidence to demonstrate legal justification shifts to the State in a suppression hearing once a defendant proves that a warrantless search has occurred and that the defendant was doing nothing unusual at the time of the search (*People v. Boston* (1979), 73 Ill. App. 3d 107, 111, 391 N.E.2d 503.) However, the State is required to demonstrate the validity of a search only by a preponderance of the evidence. (See *People v. Boston* (1979), 73 Ill. App. 3d 107, 391 N.E.2d 503.) In rendering its decision, the trial court in the present matter adopted the reasoning of an opinion from the State of Iowa where the "clear and convincing standard" was applied. (See *State v. Carter* (Iowa 1978), 267 N.W.2d 385, 386.) It is evident, therefore, that the trial court in the present matter erred when it applied a standard of proof which was higher than the preponderance of the evidence standard.

■ ■ Moreover, private action is not subject to the exclusionary rule of the fourth amendment because there would be no deterrent effect to punish this type of individual action. (*Burdeau v. McDowell* (1921), 256 U.S. 465, 475, 65 L. Ed. 1048, 1051, 41 S. Ct. 574, 576.) In addition, participation by the police in a search, in and of itself, does not automatically invoke the exclusionary rule. See *People v.*

*Heflin* (1978), 71 Ill. 2d 525, 539-40, 376 N.E.2d 1367.

It is true that the fourth amendment, as it applies to the States through the fourteenth amendment, requires that any search or seizure be reasonable. (*Terry v. Ohio* (1968), 392 U.S. 1, 8-9, 20 L. Ed. 2d 889, 898-99, 88 S. Ct. 1868, 1873.) And, to this end, the search and seizure provision of the Illinois Constitution is construed very similarly with the same provision of the Federal Constitution. (*People v. Lee* (1971), 48 Ill. 2d 272, 278-79, 269 N.E.2d 488.) However, probable cause for an arrest is not required in order to conduct a stop-and-frisk pursuant to *Terry v. Ohio*. As long as the officer has sufficient and articulable facts which create a reasonable suspicion that the person has committed or is about to commit a crime (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 905-06, 88 S. Ct. 1868, 1879-80), he may conduct a pat-down search of the outer clothing of the defendant in order to protect himself if defendant is armed (392 U.S. 1, 29, 20 L. Ed. 2d 889, 910-11, 88 S. Ct. 1868, 1884). Whether an officer believes that a subject is armed is not judged by the probable cause test; the officer need only have a reasonable belief that either his safety or the safety of others is in danger. 392 U.S. 1, 27, 20 L. Ed. 2d 889, 909, 88 S. Ct. 1868, 1883.

In the present case, it was established that the Aragon Ballroom installed a metal detector in order to protect the safety of its patrons and property and also to maintain an orderly audience. The purpose of the metal detector was to detect large masses of metal, thereby deterring the concealed possession of weapons at the ballroom. The record also establishes that the ballroom had control of the detector and bore the cost of installing and running the detector. In view of such facts, it is our opinion that the metal detector was not installed in order to obtain incriminating evidence to assist the police in catching criminals. It was primarily used to protect the patrons at the ballroom.

■ Moreover, it was demonstrated that Officer Venticinque was not part of the ballroom's security plan to protect its patrons. It is true that the police officer was on duty when he made the subsequent frisk of defendant. However, it is our opinion that it was only a fortuitous circumstance that placed the police officer in the area of the metal detector when defendant triggered the alarm. Accordingly, we cannot agree with defendant's contention at trial that the metal detector constituted State rather than private action. However, we do feel that the stop-and-frisk of defendant by Officer Venticinque constituted State action, and therefore, is subject to constitutional scrutiny.

■ Once defendant went through the metal detector and triggered the alarm because he had a large metal mass concealed on his person, Officer Venticinque had reasonable and articulable facts from which he could presume that defendant was unlawfully carrying a concealed weapon and could be considered dangerous. Accordingly, we must conclude that the purpose of the officer's pat-down search of defendant was not to collect evidence of a crime, but rather to protect himself and others from danger due to the possibility of a concealed deadly weapon. It was established that the scope of the pat-down search was no more intrusive than was necessary to locate a weapon. Therefore, we feel that the evidence introduced by the State clearly met the preponderance of the evidence standard in that it showed that the pat-down search by Officer Venticinque was constitutionally justified under *Terry v. Ohio*. Moreover, once the police officer recovered the weapon, he had probable cause to arrest defendant for unlawful use of weapons.

As indicated above, the sign in question stated: "For your safety, upon entry you will be check [*sic*] by an electronic metal detector." The trial court found the wording of this sign to be ambiguous, and therefore, concluded that defendant had not voluntarily given his consent to be searched by the electronic device. In reaching its decision, the court relied upon *State v. Carter*, which held that certain signs posted at a particular rock concert were ambiguous. Those warnings stated that no alcoholic beverages, soft drinks, controlled substances or smoking were allowed in the auditorium and that people might be "checked" to see if they complied with these rules. The Iowa court held that there was no consent to random searches by armed, uniformed guards because the warning, which used the word "check," gave no indication of an impending personal search. (267 N.W.2d 385, 387.) However, no metal detector was used in the Iowa case. We do not feel that the wording of the present signs, in question, was ambiguous, because there is only one way to be checked by a metal detector and that is by passing through its electronic beam.

■ Moreover, we believe it evident that defendant impliedly consented to this private check. Defendant did not testify that he could not turn around and leave at any time. It was established that people were lined up in single file going through the metal detector. Therefore, it is apparent that defendant was free to step out of line at any time if he did not wish to be checked. Defendant also failed to state that he was unable to read English or Spanish. The only conclusion that can be reached from these facts is that defendant

voluntarily went through the metal detector. Since defendant's attempt to enter the viewing area in the Aragon Ballroom manifested his willingness to submit to the check (see *United States v. Doran* (9th Cir. 1973), 482 F.2d 929), we must conclude that the trial court's holding that defendant did not consent to the private search was in error.

For the foregoing reasons, the order of the circuit court of Cook County is reversed and the cause is remanded for further proceedings.

Order reversed; cause remanded.

BUCKLEY, J., concurs.

JUSTICE CAMPBELL, dissenting:

I do not share my colleagues' opinion that the evidence should not be suppressed and respectfully dissent. In my judgment, it necessarily follows from the majority holding that any person who activates a metal detector while attending a sporting event, concert or public event, on private property, where signs are posted advising that patrons may be checked, must automatically submit to a search by a police officer who happens to be present.

At the hearing on defendant's motion to suppress on November 12, 1982, Officer Venticinque testified to the following additional details: that he was standing approximately three feet away from the metal detector; that he observed an individual passing through the metal detector; that he and the security personnel went up to the subject and he made a pat-down search and recovered a loaded revolver on his person. He then placed the individual under arrest. The officer indicated that he had made other arrests using metal detection equipment in the past.

On cross-examination, Officer Venticinque testified that the sign did not say that a person would be searched upon entering. The sign indicated that an individual would be checked, not searched. He did not know if defendant's admission ticket had been surrendered before passing through the metal detector or not. At the time of this incident the lobby was crowded. When the defendant walked through the detector, the alarm sounded and the officer went over to defendant to search him. He did not have a conversation with defendant. The officer was not a specialist in metal detectors, nor was he familiar with their operating procedure. He knew that where the heavy alarm sounded, it indicated that the person had something

on him that had large quantities of metal. Keys could activate a metal detector.

The record does not indicate whether the police officer was in uniform or not, and it is undisputed that the only activities engaged in by the defendant were the acts of purchasing an admission ticket to a boxing event and walking through the metal detector device to attend the event. While defendant walked through the metal detector device, the alarm sounded, and the police officer stopped and seized the defendant and performed a pat-down search. The police officer did not identify himself, and there was no conversation between the officer and the defendant. The trial court, following a hearing on the motion to suppress, determined that any implied consent of the defendant was not freely and voluntarily given.

In analyzing these facts under the *Terry* standards for a stop-and-frisk search, the majority concludes that "once defendant went through the metal detector and triggered the alarm because he had a large metal mass concealed on his person, Officer Venticinque had reasonable and articulable facts from which he could presume that defendant was unlawfully carrying a concealed weapon and could be considered dangerous." From this holding, it would follow that any person activating a metal detector upon private property presents a *prima facie* case of specific and articulable facts, in addition to a waiver of consent, to justify a seizure and a search by police, even if such alarm is caused by keys or other metal objects unrelated to any crime or offense.

In the recent traffic stop case, *People v. Long* (1983), 99 Ill. 2d 219, 227, 457 N.E.2d 1252, 1255-56, our supreme court stated:

> "Before the decision in *Terry v. Ohio*, it was considered that the restraint of any person that amounted to seizure for fourth amendment purposes was invalid unless probable cause requirements were met. (See *Florida v. Royer* (1983), 460 U.S. 491, 498, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324.) With *Terry v. Ohio*, however, the United States Supreme Court recognized a limited exception to the probable cause requirement, which was intended to allow police to briefly detain a person for investigatory purposes and, if necessary for safety, to search that person for weapons. In *Terry*, the court explained that the exception to the probable cause requirement would arise in cases where police conduct could be deemed reasonable because the governmental interest justifying the seizure outweighed the intrusion on the individual's fourth amendment interests. (392 U.S. 1, 20-23, 20 L. Ed. 2d

889, 905-07, 88 S. Ct. 1868, 1879-81.) During the years since *Terry*, courts have used this balancing test to measure the legality of countless brief detentions by police, but the basic tenets justifying the *Terry* exception have remained unchanged. See *United States v. Place* (1983), 462 U.S. 696, 703, 77 L. Ed. 2d 110, 118, 103 S. Ct. 2637, 2642-43.

The *Terry* court provided further guidance by stating that an analysis of whether an officer's conduct was reasonable requires a dual inquiry. The conduct constituting seizure or search must have been 'justified at its inception, and *** reasonably related in scope to the circumstances which justified the interference in the first place.' (392 U.S. 1, 20, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868, 1879.) To make these determinations, a court should consider whether the facts available to the police officer would warrant a man of reasonable caution to believe that the police action was appropriate. An objective standard applies, so the police officer seeking to justify the intrusion 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' *Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880. See also *People v. Smithers* (1980), 83 Ill. 2d 430, 434; *People v. Tassone* (1968), 41 Ill. 2d 7, 10."

Here, the trial court found, after applying the above legal principles to the facts and circumstances of this case, that there was no justification for the search and seizure of defendant nor was there implied consent by defendant. I agree. Even if we accept the police officer's version of the encounter, the mere activation of a metal detector by a patron on private property does not provide articulable facts to justify seizure, or an implied consent to search. The majority's willingness to find, as a matter of law, that the police acted in a reasonable manner and that the word *"check"* is synonymous with the word *"search"* is unfounded. Moreover, implied consent is simply unsupported by the facts in this case. When the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority. (*Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319.) Any implied consent given by defendant was insufficient to encompass the body search to which he was subjected. In my view, the police improperly seized the defendant within the meaning of the fourth amendment and con-

sent, if any, was tainted, and the evidence should have been suppressed.

In the majority opinion numerous findings of fact have been made contrary to the explicit findings of fact made by the trial court. This entire episode appears to be predicated upon a hunch, mere suspicion, or intuition, and devoid of any specific and articulable facts to justify the warrantless seizure, search and arrest. "The inquiry must focus on what was done and known by the police, not on what was believed, what the facts objectively viewed added up to, not what the officer on the scene believed they added up to." *People v. Moody* (1983), 94 Ill. 2d 1, 10, 445 N.E.2d 275, 279.

The evidence that is alleged to establish implied consent here is entirely consistent with innocent behavior. Up to the time the defendant walked through the metal detector no probable cause existed to believe that defendant was carrying a weapon. It was conceded in the testimony of the police officer that keys could activate the alarm system. It is not unreasonable to assume that jewelry and other articles could also activate the alarm system. The police officer did not claim to have any background experience in the use of metal detectors, as in some airport encounter cases, nor were there any suspicious actions or behavior or conversation on the part of the defendant. There are no facts in the record of this case to predicate a claim of implied consent.

It was the duty of the trial court to determine objectively whether there was probable cause to arrest and implied consent to search the defendant, and it found both lacking here. A reviewing court will not disturb a trial court's finding on a motion to suppress unless that finding is determined to be manifestly erroneous. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766; *People v. Free* (1983), 94 Ill. 2d 378, 447 N.E.2d 218, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200.) There is nothing apparently incriminating about walking through a metal detector, and there is no evidence to support the finding of implied consent as found by the majority. I would, therefore, affirm the judgment of the trial court.