THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
DONALD BURY, Defendant-Appellee.

Fourth District   No. 4—89—0603

Opinion filed June 29, 1990.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

William E. Nelson, of Nelson & Stipp, P.C., of Hoopeston, for appellee.

JUSTICE LUND delivered the opinion of the court:

On September 2, 1988, defendant Donald Bury was charged by information in the circuit court of Vermilion County with committing the offense of computer fraud. (Ill. Rev. Stat. 1987, ch. 38, par. 16D—5(a)(3).) On April 18, 1989, defendant filed a motion to suppress, seeking to exclude as evidence all oral and written statements of defendant and all physical evidence taken from defendant's home on September 2. The court granted defendant's motion. The State now appeals.

The motion to suppress hearing was conducted on July 14, 1989. The State's evidence establishes that on September 2, 1988, two State Police officers, Sergeant Abigail Abraham and Agent Mark Maton, and two security agents for the U.S. Sprint phone company proceeded to defendant's home around 9 p.m. At the time, they had an arrest warrant for defendant for the instant offense in their possession. Defendant, after being told who they were, invited them inside. The warrant was not served at this point.

Defendant, his wife, and the four investigators proceeded to defendant's kitchen. The officers indicated they wished to speak

about defendant's dealings with U.S. Sprint and Call Indiana. Defendant agreed and did so. Within a short time, they asked permission to search the residence. A consent to search was presented and signed by defendant at 9:17 p.m. His wife offered to sign it also. The consent form specifically mentioned the defendant's study.

While two of the investigators conducted the search, defendant continued to speak with Sergeant Abraham. During that time, defendant discussed his involvement in the charged offense. Defendant was asked if he would give a written statement, and he agreed. The statement was given around 9:30 p.m. and placed on a pre-printed form entitled "Voluntary Statement." Defendant read the form and statement, and then signed it. Defendant had not yet been placed under arrest and never asked if he was or would be.

At this point, the search of the study was completed. Defendant then asked if something was going to happen or if he should consult an attorney. Defendant was then told of the arrest warrant. Defendant's wife became upset because she had just returned from surgery, and defendant's arrest would create a hardship since she was on crutches and this was Friday night. The police attempted to contact the prosecuting attorney to see if they could hold off on the warrant until after the weekend. When they were unable to contact anyone, they executed the warrant and gave defendant's wife a ride to the home of one of their children.

Upon the close of the State's evidence, the court stated:

"[I] [b]elieve even in the 80's which we're presently in, that there are certain modes of conduct which go to an extreme. It is shocking in my opinion that the State Police went out there with their arrest warrant, they knew about the constitutional provisions. They were playing games with the constitution if you have an arrest warrant and they know, as she said at the very end, that she knew that when she saw this man that she had to arrest him, because she went as far as to call Chicago to get advi[c]e as to how not [to] arrest him.

Motion will be allowed to suppress and the fruits thereof."

■ Initially, we comment on the insufficiency of the court's order. Section 114—12 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 114—12(e)) provides:

"The order or judgment granting or denying the motion [to suppress] shall state the findings of facts and conclusions of law upon which the order or judgment is based."

This requirement serves the salutary purpose of enlightening the appellate court as to the evidence and reasoning relied upon below, and

thereby facilitates review. (*People v. Reincke* (1980), 84 Ill. App. 3d 222, 405 N.E.2d 430.) Trial courts have appeared reluctant to comply with this provision, and the reviewing courts have repeatedly commented on the failure to do so. (See, *e.g., People v. Brown* (1990), 136 Ill. 2d 116; *People v. Winters* (1983), 97 Ill. 2d 151, 454 N.E.2d 299; *People v. Jones* (1984), 129 Ill. App. 3d 618, 472 N.E.2d 1176; *Reincke,* 84 Ill. App. 3d 222, 405 N.E.2d 430; *People v. Drury* (1971), 130 Ill. App. 2d 798, 268 N.E.2d 460.) However, we can find no case which has remanded an order for compliance with section 114—12 of the Code. Accordingly, while we find the present order is more deficient than those in other cases, we will not remand the case for compliance but simply continue to exhort the trial courts to conform their orders to the mandates of the statute.

The difficulty with orders that do not adhere to the statute is readily apparent in the present case. While the court's order appears based on some vague assertion of fundamental unfairness and due process, the briefs have focused on the voluntariness of defendant's consent to search and the necessity of the giving of the defendant *Miranda* rights prior to his statement. Since these are the issues briefed, these are the issues we will address.

■ First, we shall deal with the simpler question, which is the validity of the search. On a motion to suppress evidence, the burden of proof is on the defendant to establish that the search and seizure were unreasonable. (*People v. Neal* (1985), 109 Ill. 2d 216, 218, 486 N.E.2d 898, 899.) Once the defendant has established that a warrantless search has occurred and that he was not doing anything unusual at the time, the burden of going forward with evidence to prove its legal justification shifts to the State. (*People v. Burton* (1985), 131 Ill. App. 3d 153, 156, 475 N.E.2d 583, 585.) However, the State is required to demonstrate the validity of a search only by a preponderance of the evidence. (*Burton,* 131 Ill. App. 3d at 156, 475 N.E.2d at 585.) A reviewing court will not disturb a trial court's determination on such a motion unless it is manifestly erroneous. *Neal,* 109 Ill. 2d at 218, 486 N.E.2d at 899.

■ It is well settled that under the fourth and fourteenth amendments a search conducted without a warrant is, subject only to a few exceptions, *per se* unreasonable. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, 36 L. Ed. 2d 854, 858, 93 S. Ct. 2041, 2043.) One such exception is a search conducted pursuant to consent. (*Schneckloth,* 412 U.S. at 219, 36 L. Ed. 2d at 858, 93 S. Ct. at 2043-44; *People v. DeMorrow* (1974), 59 Ill. 2d 352, 360, 320 N.E.2d 1, 6.) The burden is on the prosecutor to establish that the consent

was voluntarily given and not the result of coercion or duress, express or implied. (*Schneckloth*, 412 U.S. at 222, 36 L. Ed. 2d at 860, 93 S. Ct. at 2045.) Voluntariness is a question of fact to be determined from the totality of the circumstances. (*Schneckloth*, 412 U.S. at 227, 36 L. Ed. 2d at 862-63, 93 S. Ct. at 2047-48.) The question is whether a defendant's consent, because his will had been overborne and his capacity for self-determination critically impaired, was not his own essentially free and unconstrained choice. *Schneckloth*, 412 U.S. at 225, 36 L. Ed. 2d at 862, 93 S. Ct. at 2047; *United States v. Watson* (1976), 423 U.S. 411, 424, 46 L. Ed. 2d 598, 609, 96 S. Ct. 820, 828.

■ Here, the evidence establishes the voluntariness of the consent. Defendant invited the officers into his home. After only 15 minutes, while sitting at his own kitchen table, he agreed to the search. The form, which was filled out and he signed, provides, "I understand that I have the right to refuse to consent to the search described above." His wife also offered to sign the form. The record fails to present any evidence that defendant was subject to any coercion or duress, other than the fact that the police were present and asking permission to search his house. While it is undeniable that this may create some pressure to comply with the request, this is insufficient to establish that defendant's will has been overborne. To the extent that the court's order can be construed as finding the consent to search was not voluntary, it is clearly against the manifest weight of the evidence.

Now, turning to the statements defendant gave, the State acknowledges that the warnings required by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, were not given. However, the State maintains they are not required in this case.

■ The rules of *Miranda* apply to admissions made by a defendant while he is in custody or otherwise deprived of his freedom in any significant way. (*Brown*, 136 Ill. 2d at 124; *People v. Lucas* (1989), 132 Ill. 2d 399, 417, 548 N.E.2d 1003, 1009.) As the *Brown* court explained:

> "The ultimate inquiry is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. (*California v. Beheler* (1983), 463 U.S. 1121, 1125, 77 L. Ed. 2d 1275, 1279, 103 S. Ct. 3517, 3520.) Although what constitutes police custody is not always self-evident, the Court in *Miranda* was concerned with interrogations that take place in a police-dominated environment containing

'inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' *Miranda*, 384 U.S. at 467, 16 L. Ed. 2d at 719, 86 S. Ct. at 1624; see also *Berkemer v. McCarty* (1984), 468 U.S. 420, 437-38, 82 L. Ed. 2d 317, 333, 104 S. Ct. 3138, 3149." *Brown*, 136 Ill. 2d at 124.

The determination of whether an interrogation is custodial should focus on all of the circumstances surrounding the questioning, such as location, time, length, mood and mode of interrogation, the number of police present, the presence or absence of family and friends of the accused, any indicia of formal arrest or evidence of restraint, the intentions of the officers, the extent of knowledge of the officers and focus of their investigation, and the age, intelligence, and mental makeup of the accused. (*Brown*, 136 Ill. 2d at 124; *Lucas*, 132 Ill. 2d at 417-18, 548 N.E.2d at 1009.) After reviewing these factors, the court must make an objective determination as to what a reasonable man, innocent of any crime, would have thought had he been in defendant's shoes. (*Brown*, 136 Ill. 2d at 124; *Lucas*, 132 Ill. 2d at 417-18, 548 N.E.2d at 1009.) Again, a reviewing court should not disturb a trial court's motion to suppress ruling unless it is against the manifest weight of the evidence. *People v. Garcia* (1983), 97 Ill. 2d 58, 74, 454 N.E.2d 274, 279.

■ After reviewing the record in the present case and considering the relevant factors, we conclude that the statements were not given in a custodial setting. Defendant is a middle-aged man and there is no indication of any mental abnormality. The interview occurred in defendant's own kitchen, with his wife present. The mood was nonthreatening. Defendant gave the questioned statements within 30 minutes of the police arriving. Admittedly, there were a number of people present and there is a certain coercive factor when police officers ask an individual questions. But, this is true of any interview by the police and is not controlling. See *Oregon v. Mathiason* (1977), 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719, 97 S. Ct. 711, 714.

We are aware that at the time the police arrived they had an arrest warrant for defendant, about which they did not immediately advise defendant. Thus, it is clear he was the focus of their investigation, and it was their intention to arrest him. However, an interrogation is custodial only when a reasonable person in the position of the defendant, innocent of any wrongdoing, would believe that he was under arrest, given all the circumstances with which he was then confronted. See *Lucas*, 132 Ill. 2d at 417-18, 548 N.E.2d at 1009.

The focus of the inquiry must always be on what the defendant thought and believed, not the officers. "Coercion is determined from the perspective of the suspect." (*Illinois v. Perkins* (1990), 495 U.S. ___, ___, 110 L. Ed. 2d 243, 251, 110 S. Ct. 2394, 2397.) In weighing all of these circumstances, the subjective intent of the police officers is relevant only to the extent that it might color their outward behavior. These intentions become probative when there is a conflict in the evidence between the defendant and the officers over how the officers behaved. If the officers intended all along to arrest the defendant, then the court might reasonably resolve such a conflict by doubting the ability of the officers to hide their intentions. But, the fact that the officers might have intended to arrest the defendant when their interrogation ceased is of no significance if their behavior was such that this intent was never revealed to the defendant. In other words, that the investigation had focused upon the defendant, even to the extent, as here, that the officers possessed an arrest warrant as the interrogation was taking place, does not matter as long as the defendant was not aware of the officers' intentions.

Here, in considering the short duration of the interview, its setting and the presence of defendant's wife, we conclude that the presence of the unarticulated intent to arrest defendant does not, by itself, transform the setting into the type with which *Miranda* is concerned. A reasonable, innocent person would not believe he was in custody at the time of the interview.

Accordingly, for the foregoing reasons, we find the trial court's order against the manifest weight of the evidence.

Reversed and remanded.

KNECHT, P.J., and STEIGMANN, J., concur.