**Dwayne CRAFT, Plaintiff,**

v.

**PACE OF SOUTH HOLLAND,
an Illinois corporation,
Defendant.**

No. 87 C 3569.

United States District Court,
N.D. Illinois, E.D.

Oct. 8, 1992.

Robert M. Hodge, Chicago, Ill., for plaintiff.

Frank M. Pawlak, Robert A. Borich, Jr., Burke, Wilson & McIlvaine, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

LINDBERG, District Judge.

Plaintiff, Dwayne Craft ("Craft"), commenced this civil rights action against defendant, Pace South Division ("Pace"), improperly sued as Pace of South Holland. Plaintiff contends that Transit Management of Harvey, Inc. ("TMOH"), the predecessor of Pace, violated his Fourth and

Fourteenth Amendment rights against unreasonable search and seizure and his right to privacy under Article I, Section 6 of the Illinois Constitution, when its managerial agents ordered him to provide blood and urine samples for drug and alcohol testing. Plaintiff was subsequently discharged when his urine sample tested positive for marijuana use. Plaintiff seeks an injunction directing defendant to reinstate him with no loss of benefits and seniority and an award of back pay from April 13, 1984, the date plaintiff was discharged.

South Suburban Safeway Lines, Inc. ("South Suburban") owned and operated a private mass transit system in Harvey, Illinois. On or about September 9, 1983, the Regional Transportation Authority ("RTA") became the owner of South Suburban. The RTA entered into a management services agreement with a private management firm, ATE Management and Service Company, Inc. ("ATE"). Pursuant to the agreement, ATE established a wholly-owned subsidiary, Transit Management of Harvey ("TMOH"), which managed the mass transit system and hired all transit employees. TMOH managed and operated the transit system until May 31, 1985, when management was undertaken by Pace of South Holland.

As of January 1, 1976, plaintiff was employed as a serviceman by South Suburban and subsequently TMOH. As a serviceman, plaintiff cleaned and fueled buses, put air in tires and went out on service calls when buses broke down. Plaintiff drove and parked buses within the transit system property. Plaintiff never drove buses containing fare-paying passengers.

In early April 1984, TMOH received an anonymous tip that employees were using drugs and alcohol on TMOH property during the night shift. Michael Perry ("Perry"), the general manager of TMOH, did surveillance of the night shift but determined that this was not an effective means to gather information. Perry then contacted Pat Jordan ("Jordan") of the Diamond Detective Agency to investigate the use of drugs and alcohol on the premises during the night shift.

On April 12, 1984, Jordan allegedly observed plaintiff and three other TMOH employees smoking marijuana on the premises. Jordan also allegedly saw plaintiff drinking alcohol and making various unspecified "transactions." Jordan telephoned Perry at around 9:00 p.m. that evening and informed him of the events he had witnessed. Perry then contacted three TMOH supervisors who met him at the bus barn at around 10:00 p.m. Plaintiff was in the bus barn with several other employees when Michael Perry, TMOH's general manager, burst into the barn with one uniformed Village of Harvey police officer and several officers of the Diamond Security Agency. The police officer searched each employee but no alcohol or drugs were discovered. Perry accused several employees of using and/or selling drugs on TMOH's premises and ordered that they be transported to a medical center in Olympia Fields for drug and alcohol testing. At the medical center, plaintiff signed a general form for consent to treatment at the hospital. Plaintiff provided a urine sample but refused to submit to a blood test, claiming it was against his religion. All tested employees were suspended pending the results of their tests.

The following day, Perry was informed that plaintiff had tested borderline positive for marijuana use. A second set of tests confirmed the result. Plaintiff did not test positive for alcohol, however, and two of the four men reportedly seen smoking marijuana did not test positive for marijuana.

On April 25, 1984, plaintiff received written notice of his termination. At the time of the incident, Rule 12(a) of TMOH's General Rule Book provided:

> The following acts are not permissible:
>
> (a) Use or possession of intoxicating liquors or narcotics of any kind from the time an employee reports for work until the conclusion of the employee's workday, or reporting for work in an impaired condition due to use of same. Use of illegal drugs is forbidden.

TMOH's drug testing policy was outlined in Rule 8 of the General Rule Book:

(a) Employees are subject to physical examinations and other medical tests, as deemed necessary to assure fitness to perform their assigned duties.

(b) Employees involved in an accident involving a possible claim of injury or property damage may be ordered to submit to a blood test and urinalysis.

(c) Employees who, when reporting for work or at any time during their workday, are apparently impaired due to alcohol or drugs, may be ordered to submit to a blood test and urinalysis.

(d) Employees whose health is impaired or becomes impaired to the extent that their safety or the safety of others becomes a question, must notify their immediate supervisor as soon as the condition is known to the employee.[1]

## DISCUSSION

█ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment be entered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FRCP 56(c). In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court set forth the shifting burden of proof applicable to FRCP 56(c) motions for summary judgment. The moving party not bearing the burden of proof at trial must inform the district court of the basis for its motion and identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. Once the moving party shows that there are no genuine issues of material fact, the burden of proof shifts to the nonmoving party, who does bear the burden of proof at trial, to "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. In order to defeat a motion for summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [the] element[s] essential to that party's case." *Id.* at 322, 106 S.Ct. at 2552. The court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be held insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

█ The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their direction. *Skinner v. Railway Labor Ex-*

---

1. A TMOH posting further put TMOH employees on notice that drug and alcohol use was prohibited and any such violation would subject employees to a blood test or urinalysis. The posting was made in late 1983 after TMOH undertook the operations of South Suburban. A copy of the posting was also placed in each TMOH employee's paycheck. The posting provided as follows:

 Alcohol or medically unauthorized drugs may not be kept or consumed on the property or in any company vehicle or parking lot. Personnel taking medication should report this fact to the Superintendent.
 Employees may not report to work in an impaired condition due to use of alcohol or drugs. To do so will be cause for dismissal.

 Employees who, when reporting for work or at any time during their work day, are apparently impaired due to alcohol or drugs may be ordered to submit to a blood test or urinalysis. Failure to comply will be cause for dismissal.
 Employees involved in an accident involving a possible claim of personal injury or property damage may be ordered to submit to a blood test or urinalysis. Failure to comply will be cause for dismissal.
 Accepting relief or permitting an employee to work who is under the influence of alcohol or drugs is prohibited and must be reported to management immediately.

*ecutives Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); See *Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967); *Delaware v. Prouse,* 440 U.S. 648, 653–654, 99 S.Ct. 1391, 1395–1396, 59 L.Ed.2d 660 (1979); United States v. Martinez–Fuerte, 428 U.S. 543, 554, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116 (1976).

 The Fourth Amendment does not apply to a search or seizure, even an arbitrary one, if effected by a private party on his own initiative. The Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government. *Skinner,* 489 U.S. at 613, 109 S.Ct. at 1411; See *United States v. Jacobsen,* 466 U.S. 109, 113–114, 104 S.Ct. 1652, 1656–1657, 80 L.Ed.2d 85 (1984). Whether a private party should be deemed an agent or instrument of the government for Fourth Amendment purposes necessarily depends on the degree of the government's participation in the private party's activities. *Skinner,* 489 U.S. at 613, 109 S.Ct. at 1411.

Judge Kocoras previously ruled that TMOH's actions in managing and operating the RTA's bus lines constituted state action, rendering the Fourth Amendment applicable to the facts of this case. The court does not revisit the state action issue previously determined by Judge Kocoras. Judge Kocoras ruled as follows:

> From the present record, it appears that the RTA has consistently maintained ownership of the mass transit system formerly known as South Suburban Safeway Lines since its acquisition in 1983. By merely contracting with ATE to create TMOH to manage and operate the transit system, while retaining ownership of the assets thereof, the RTA did not and could not transform its public operation into a private one. Because the RTA never contracted away its ownership of the assets of South Suburban, the actions of TMOH, taken pursuant to its

---

**2.** The Fourth Amendment, as applied to the states through the Fourteenth Amendment, requires that any search and seizure be reasonable. The same provision of the Illinois Constitution (Article I, Section 6) is construed in a

---

contractual duty to manage and operate the RTA's bus lines, may be fairly viewed as state action under the facts of this case. Therefore, defendant's motion for summary judgment on this basis must be denied.

*Craft v. Pace,* No. 87 C 3569, Memorandum Opinion and Order at 7, 1988 WL 13327 (February 12, 1988) (Kocoras, J.)

 The Supreme Court has long recognized that a compelled intrusion into the body for blood to be analyzed for alcohol content must be deemed a Fourth Amendment search.[2] *Schmerber v. California,* 384 U.S. 757, 767–768, 86 S.Ct. 1826, 1833–1834, 16 L.Ed.2d 908 (1966). The Supreme Court has held that because the collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable, these intrusions must be deemed searches under the Fourth Amendment. *Skinner,* 489 U.S. at 617, 109 S.Ct. at 1413.

 To hold that the Fourth Amendment is applicable to drug and alcohol testing only begins the inquiry into the standards governing such intrusions. *O'Connor v. Ortega,* 480 U.S. 709, 719, 107 S.Ct. 1492, 1499, 94 L.Ed.2d 714 (1987). The Fourth Amendment does not proscribe all searches and seizures; it proscribes only those that are unreasonable. *United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985); *Serpas v. Schmidt,* 827 F.2d 23 (7th Cir. 1987). Reasonableness "depends on all the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez,* 473 U.S. 531, 537, 105 S.Ct. 3304, 3308, 87 L.Ed.2d 381 (1985). The Supreme Court has discussed the reasonableness inquiry as follows:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of

---

manner similar to that of the Federal Constitution. *People v. Grod,* 385 Ill. 584, 53 N.E.2d 591, 595 (1944); *People v. Burton,* 131 Ill.App.3d 153, 86 Ill.Dec. 369, 372, 475 N.E.2d 583, 586 (1st Dist.1985).

the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). The permissibility of a particular practice "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Skinner*, 489 U.S. at 619, 109 S.Ct. at 1414, quoting *Delaware v. Prouse*, 440 U.S. at 654, 99 S.Ct. at 1396; See *United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

▮▮▮▮ The general rule is that a search or seizure is unreasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). The warrant requirement is to protect privacy interests by assuring citizens subject to a search or seizure that such intrusions are not the random or arbitrary acts of government agents. *Skinner*, 489 U.S. at 620, 109 S.Ct. at 1415. A warrant assures citizens that the intrusion is warranted by law and that it is narrowly limited in its objectives and scope. *New York v. Burger*, 482 U.S. 691 at 703, 107 S.Ct. 2636, 2644, 96 L.Ed.2d 601 (1987). A warrant also provides the detached scrutiny of a neutral magistrate, and thus ensures an objective determination whether an intrusion is justified in any given case. *United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977).

The Supreme Court, however, has recognized exceptions to the warrant requirement in certain employee drug-testing cases. See *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 617–20, 109 S.Ct. 1402, 1413–1414, 103 L.Ed.2d 639 (1989); *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 664, 109 S.Ct. 1384, 1390, 103 L.Ed.2d 685 (1989). In *Skinner*, the Federal Railway Administration ("FRA") promulgated regulations which required railroads to conduct blood and urine tests of covered employees after major train accidents. The FRA regulations also authorized railroads to administer breath and urine tests to covered employees who violated certain safety rules. The Court determined that when the Fourth Amendment intrusion served special government needs, beyond the need for law enforcement, the court must balance the individual's privacy expectations against the government's interests to determine whether it was impractical to require a warrant or some level of individualized suspicion in the particular context. *Skinner*, 489 U.S. at 617–20, 109 S.Ct. at 1413–1414.

The *Skinner* Court noted that the warrant requirement would do little to further the aims of ensuring against "random or arbitrary acts of government" because "the circumstances justifying toxicological testing and the permissible limits of such intrusions are defined narrowly and specifically in the regulations that authorize them, and doubtless are well known to covered employees." The court also reasoned that application of the warrant requirement could result in the destruction of valuable evidence. In justifying the departure from the probable cause requirement, the court stressed that: (1) the various tests required or authorized constitute relatively limited intrusions upon privacy; (2) the expectations of privacy of covered employees are diminished by reason of their participation in an industry that is regulated pervasively to ensure safety; and (3) the government interest in testing without a showing of individualized suspicion is compelling as employees who are subject to testing under the FRA regulations can cause great human loss before any signs of impairment become noticeable to supervisors or others.

In *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), the companion case to *Skinner*, the court determined that the Customs Service could compel urinalysis of employees seeking a transfer or promotion to positions involving drug inter-

diction or requiring the carrying of firearms. The Court found the drug testing requirements to be reasonable because the workers subject to the testing "discharge duties fraught with such risk of injury to others that even a momentary lapse of attention can have disastrous consequences." *Id* at 670, 109 S.Ct. at 1393. The *Von Rabb* Court stated that "our decision in *Railway Labor Executives* reaffirms the longstanding principle that neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance." 489 U.S. at 665, 109 S.Ct. at 1390. The Court remanded that portion of the case dealing with suspicionless testing of employees with access to classified material, noting that the class of employees was drawn too broadly. *Id* at 677, 109 S.Ct. at 1397.

Subsequent to the *Skinner* and *Von Raab* decisions, the Seventh Circuit upheld a similar drug testing program as applied to Cook County correctional officers in safety sensitive positions. *Taylor v. O'Grady*, 888 F.2d 1189, 1199 (7th Cir. 1989). In *Taylor*, a number of correctional officers and supervisors sought to enjoin the Cook County Department of Corrections from implementing a drug testing program known as the annual mandatory urine testing program ("AMUT"). The AMUT program required every correctional officer and correctional supervisor of the Department to produce a urine sample once a year for chemical analysis. Under the program, the officers would have no advance notice of the day they would be tested.

The Seventh Circuit reversed the district court's decision to enjoin implementation of the AMUT program and held that the program was not significantly different than the suspicionless, warrantless drug testing programs upheld in *Skinner* and *Von Raab*. The court determined that the government's interest in the integrity of its work force was not sufficiently strong to overcome the employees' privacy interests. *Id.* at 1196. However, the court found that the government's interests in avoiding the dangers resulting from an impaired work force or from drug smuggling justified the drug testing of correctional employees who came into regular contact with prisoners or had opportunities to smuggle drugs to prisoners. The court found that testing of correctional employees who had no regular access to the inmate population, no reasonable opportunity to smuggle drugs into the inmate population and no access to firearms should be enjoined as the Department would gain nothing by testing them. *Id* at 1197. The court explained that the case would have to be remanded for further factfinding as the current record did not permit definition with particularity of all jail personnel who were exposed to inmates on a regular basis.

In *Dimeo v. Griffin*, 924 F.2d 664 (7th Cir.1991), the Seventh Circuit upheld the district court's preliminary injunction enjoining the Illinois Racing Board from enforcing its random urine testing program. In analyzing this Fourth Amendment issue, the court noted that the Board was attempting to bring its drug testing program within the "special government needs" exception so it could test without a warrant, without probable cause, without individualized suspicion and without having to show that the group to be tested were drug abusers. *Id.* at 671. The court held that the Racing Board's interests in preventing fraud and practices detrimental to the public interest and in protecting the safety and integrity of the sport and the market reputation of horses were not enough to outweigh the privacy interests of the licensees.[3] According to the Seventh Circuit, the Board's interest in the integrity of horse racing and the possible loss of revenue to the state did not compare with the much more important public interests articulated in *Skinner* and *Von Raab*, e.g. the loss of life in a train accident, or the irresponsible and dangerous use of guns by

---

**3.** The Plaintiff class is composed of licensees, those individuals licensed by the Illinois Racing Board to work on Illinois race track grounds privately owned by race track organizations. Licensees include outriders, parade marshalls, starters, assistant starters, drivers and jockeys.

Customs officers. *Id.* at 673. Although the court acknowledged the physical danger in horse racing, the court determined that the safety concerns were much more limited than in *Skinner* and *Von Raab* as there was little danger to public spectators. *Id.* at 673. After dismissing all the interests articulated by the Racing Board, the court also concluded that the fact that horse racing was a pervasively regulated activity was not enough to justify random urinalysis testing of licensees.

■ Defendant argues it could test plaintiff without a warrant, without probable cause and without individualized suspicion pursuant to the analytical framework of *Skinner* and *Von Raab.* Rules 8(b) and (c) of the TMOH General Rule Book delineate two situations where blood or urinalysis testing may be performed: 1) when employees are involved in an accident involving a possible claim of injury or property damage, and 2) when employees reporting to work or at any time during the work day are apparently impaired due to alcohol or drugs. While testing following an accident without any showing of individualized suspicion would appear to be similar to the Federal Railway Administration ("FRA") regulations upheld by the *Skinner* Court, Rule 8(b) is inapplicable to the facts of this case. No accident involving personal injury or property damage precipitated the testing of plaintiff.

Rule 8(c), which permits testing of employees who appear to be impaired by alcohol or drugs, may be applicable to these facts. Pat Jordan of the Diamond Detective Agency allegedly observed plaintiff smoking marijuana and drinking alcohol on TMOH premises and reported this incident to Michael Perry, TMOH's general manager. However, when Jordan subsequently testified before the Illinois Human Rights Commission, he admitted that his report to Perry had not been quite accurate. Jordan testified that he never saw plaintiff "raise what you would think is a marijuana cigarette to his lips and take a puff." IDHR Transcript at 596. When plaintiff returned from the testing at Olympia Fields hospital, a manager ordered plaintiff to park some

buses, which he did. It is unlikely that defendant would have ordered plaintiff to operate the buses if any signs of impairment were present. Given the discrepancy in Jordan's testimony, it is uncertain whether plaintiff actually consumed any drugs on the premises. What is certain is that there is no testimony of observed impairment and conflicting testimony as to usage in the record.

Whether or not this rule is applicable to the facts of this case, it is significant that Rule 8(c) does not permit drug testing without some showing of individualized suspicion. "Employees who, when reporting for work or at any time during their workday, are apparently impaired due to alcohol or drugs, may be ordered to submit to a blood test and urinalysis." Rule 8(c). This rule is quite different from the drug testing policies approved in *Skinner, Von Raab* and *Taylor,* where no showing of individualized suspicion was required. Because defendant cannot test plaintiff under Rule 8(c) absent some showing of individualized suspicion, the *Skinner* and *Von Raab* exception to the probable cause requirement is inapplicable. The pre-*Skinner* analytical framework should therefore be applied in determining whether plaintiff's drug testing was reasonable under the Fourth Amendment. The court, however, will not readdress whether defendant had probable cause to order plaintiff to submit to drug testing. This issue was previously determined by Judge Kocoras when he denied defendant's motion for summary judgment, concluding there were genuine issues of material fact for trial.

■ One other provision of defendant's drug testing policy, Rule 8(a), may be applicable to the facts. Rule 8(a) provides that "[e]mployees are subject to physical examinations and other medical tests, as deemed necessary to assure fitness to perform their assigned duties." "Medical tests" can be broadly interpreted to include blood and urinalysis testing as no specific tests are designated to limit the interpretation of this rule. Given the ambiguity in the language "as deemed necessary," however, it is unclear whether defendant would have

to have individualized suspicion before drug testing plaintiff to assure his fitness to perform his assigned duties.

Assuming no showing of individualized suspicion is required, the *Skinner* exception is yet inapplicable as Rule 8(a) lacks the specificity or safeguards of the *Skinner* and *Von Raab* policies. In *Skinner*, the Supreme Court explained that the warrant requirement, which protects against random and arbitrary acts of government, was unnecessary because the regulations narrowly and specifically defined the permitted intrusions, which were well known to covered employees. The carefully crafted regulations in *Skinner* effectively operated as a standing warrant to all covered employees placing them on notice that if they violated the regulations, they would be subject to drug testing. Here, Rule 8(a) does not narrowly or specifically define the circumstances under which such intrusions may be ordered by defendant. Rule 8(a) further authorizes any examination, test or procedure desired by defendant. The rule lacks the specificity and careful tailoring to amount to a standing warrant as in *Skinner*.

The rule also fails to specify or narrow the employees subject to testing. Testing could only be performed in *Von Raab* if customs service employees sought a transfer or promotion to positions involving drug interdiction or carrying fire-arms. The Court remanded that portion of the case dealing with the testing of employees with access to classified information because the class of employees was drawn too broadly. In *Taylor*, the Seventh Circuit excluded testing of correctional employees who had no regular access to prisoners, no reasonable opportunity to smuggle drugs to prisoners and no access to firearms. The Seventh Circuit further remanded the case to the district court for additional findings as the record lacked specificity concerning which prison personnel were exposed to inmates on a regular basis. Here, all TMOH employees are covered by Rule 8(a). The rule makes no attempt to limit application to employees in safety sensitive positions, where any impairment could result in harm to the bus-riding public.

 After analyzing defendant's three drug testing provisions, the court determines that the *Skinner* exception to the probable cause standard is inapplicable to the facts of this case. This case will be tried under pre-*Skinner* Fourth Amendment analysis. As noted above, the court will not reanalyze whether defendant acted reasonably and with sufficient probable cause in ordering plaintiff to submit to drug testing. This issue was previously determined by Judge Kocoras in denying defendant's prior motion for summary judgment. Defendant's renewed motion for summary judgment is denied.

ORDERED: Defendant's renewed motion for summary judgment is denied.